276 P.2d 959

STATE of Idaho, Plaintiff-Respondent,

v.

Ralph CONSTANZO, Defendant-Appellant.

No. 8093.

Supreme Court of Idaho.

Nov. 23, 1954.

Charles F. Reddoch, Charles S. Stout, Boise, for appellant.

Robert E. Smylie, Atty. Gen., Edward J. Aschenbrener, Asst. Atty. Gen., Blaine F. Evans, Pros. Atty., J. Charles Blanton, Deputy Pros. Atty., Boise, for respondent.

GIVENS, Justice.

Prior to his trial for and conviction of receiving stolen property in violation of Section 18–4612, I.C., appellant, by timely motion, sought to suppress from evidence the stolen cigarettes as obtained by an il-

legal search and the denial of such motion is the principal assignment of error.

The affidavit for the warrant described the premises to be searched as:

"* * * in a certain space under the building known and designated as the Roma Club, located in Garden City, Idaho, occupied by and under the control of said Ralph Constanzo, * * *."

The warrant commanded search—

"* * * of the Roma Club, situated in Garden City, Idaho, * * *."

■ The description of the premises in the warrant should conform to the description in the affidavit. Burns v. State, 92 Okl.Cr. 24, 220 P.2d 473.

■ If the description in the warrant be restricted, but is included in the description in the affidavit, the warrant is less subject to being considered invalid than if the description in the warrant comprehends more than the affidavit.

■ The affidavit is the sole basis and justification for the issuance of the warrant and the description in the affidavit controls and circumscribes the description in the warrant. Section 19-4403, I.C.

"* * * the search warrant must conform strictly to the constitutional and statutory provisions providing for its issuance. It must contain a description of the premises to be searched. No discretion must be left to the officer executing the warrant as to the premises which he is authorized to search.

"The statute under which the warrant was issued provided only for the search of a place where there was probable cause to believe that intoxicating liquors were sold, furnished, delivered, given away, or otherwise disposed of in violation of law, or kept for such purposes. A search warrant issued under this statute, authorizing an officer to search a certain place, *cannot be extended so as to constitute authority to search a person not connected in any way with the place being searched, who merely happens to be on the premises, and who is not mentioned or described in the affidavit of probable cause upon which the warrant was issued.*" Purkey v. Maby, 33 Idaho 281, 282, 193 P. 79. (Emphasis added.)

■ The above case supports the principle that the search warrant may not go beyond the description in the affidavit. If, however, the description in the warrant reasonably encompasses the description in the affidavit, the search to the extent only of the description in the affidavit is not invalid. The description in the warrant "of the Roma Club" did not exclude any part thereof and thus, at the time the motion to suppress was denied, the court was justified in considering the warrant was good as to the limited description in the affidavit, namely, a place under the Roma

Club; People v. Lienartowicz, 225 Mich. 303, 196 N.W. 326; People v. Ranes, 230 Mich. 384, 203 N.W. 77, and the search was made only in the basement, which was "in a certain space under the building known and designated as the Roma Club. * * * "

"Although a search warrant is void if it attempts to describe a place to be searched which is not described in the affidavit for the search warrant, as pointed out in the cases relied on by appellant, yet it does not follow that there must be an exact uniformity between the two instruments. The rule is based upon the necessity of having the affidavit designate the place to be searched as a basis for issuance of the warrant. It must not be carried to the technical limit, ignoring the proposition that the purpose of the affidavit and of the search warrant is to point out with reasonable certainty the premises to be searched. We conclude that on this record the fact that the search warrant referred in one place to 'dwellings' does not invalidate it, although the affidavit used the term in the singular. The residence actually occupied by the appellant was searched and the liquor was therein found. The fact that the search warrant attempted to authorize also the search of some other residence located on the land owned by appellant does not invalidate the search." Peeples v. State, 216 Miss. 790, 63 So.2d 236, 239.

The entire building in which the Roma Club was located, including the club and the basement and all spaces under it, were in and under the sole and exclusive possession, dominion and control of appellant. While there was some evidence appellant indicated to Cochran (later stated to be the thief, but not to appellant) he could temporarily occupy a room in the basement, which room was not definitely shown nor the length of time it was so occupied, if at all.

Since the search did not extend beyond the place designated in the affidavit, it was not invalid and did not violate appellant's rights. Pickens v. State, 70 Okl.Cr. 301, 106 P.2d 127; 39 A.L.R. 841.

■ Respondent urges appellant consented to the search, obviating reliance on the warrant. Since the warrant was sufficient to justify the search and the admission of the cigarettes thereby found in the basement, it is unnecessary to consider this point, except to state that while it is recognized a constitutional search without a warrant, or where the warrant is invalid, may be made where consent is given, State v. Arnold, 52 Idaho 349, 15 P.2d 396, the consent must be free and clear of any coercive effect of an invalid search warrant, Hernandez v. State, 137 Tex.Cr.R. 343, 129 S.W.2d 301, at page 305, and the doctrine of consent search is to be applied with caution and circumspection.

Appellant challenges the sufficiency of the evidence to sustain the verdict, particularly as not showing guilty knowledge by appellant, that is, that he received the cigarettes knowing them to have been stolen.

The officers went to the Roma Club, appellant's place of business, in the forenoon and secured permission to look around outside the premises and found approximately a case and a half of the stolen cigaretts (all burglarized in Wallace) in a recess or space through an opening in the outside wall of the basement of the Club building. Appellant denied knowledge of them or of having any connection with them and told the officers to take them away. On this trip he first denied he knew Cochran, but on being shown his picture, appellant admitted knowing him.

When the officers returned in the afternoon with the search warrant, they testified they found an empty cardboard case by a stove and cartons of cigarettes (identified as stolen and previously taken from the case) in the stove where appellant said he had put them to keep them cool and that Cochran had brought the cigarettes to appellant to keep for him.

Appellant thus denied the above:

"Q. What did they find? A. Upstairs they find anyting, but downstairs they find 21 cartons of cigarettes that was right on the cook stove.

"Q. Did you put those cigarettes in that stove? A. No, I did not.

"Q. Did you ever receive any cigarettes from Floyd Cochran? A. No, sir.

"Q. Did you know the cigarettes were in the stove? A. No, I didn't know anything about it.

"Q. You heard the testimony here of Frank Boor and Rosecrans to the effect that you said that you had put those cigarettes in the stove; what have you to say at that? A. They lie, they didn't tell the truth because I never even speak to them. I never said a word.

\* \* \* \* \* \*

"Q. Do you recall being downstairs in the basement? Do you recall this large wood burning stove you have in the basement, Mr. Constanzo? A. Yes, there is a stove down there.

"Q. And it has a large oven in it? A. Yes, for baking.

"Q. Do you recall our finding the cigarettes in the oven of that stove? A. Well, I don't know anything about the cigarettes that was in there.

"Q. You don't know anything about it at all? A. No.

"Q. Do you remember seeing us take those cigarettes out of the stove? A. No, I see the cigarettes when you were there and Rosecrans come down there, but not before.

"Q. When the cigarettes were taken out of the stove they were handed to

you, and you were asked to sign your name on the cartons? A. Yeah.

"Q. And you did that? A. Yeah.

"Q. On all of the cartons of cigarettes? A. That is right.

"Q. And State's Exhibit 3, just the cardboard carton and not the cigarettes, this cardboard carton was next to the stove; was it not? A. That is not the carton. The carton was kind of a cracker carton—not this one—white— no mark, no letter, no nothing.

"Q. You recall, do you not, that this large No. 4 was pointed out to you, and you said that was the box the cigarettes came in? A. No.

"Q. Do you deny that? A. You never point to me nothing.

"Q. All right, at that time you told Mr. Rosecrans and Frank Boor that you had taken the cigarettes out of the carton and placed them into the stove in order to keep them cool; isn't that right? A. I didn't.

"Q. Do you deny that you told Mr. Rosecrans? A. I am not denying— I never said no such thing.

"Q. You wait until I finish the question. A. Go ahead.

"Q. Do you deny that you told Lieutenant Boor and Mr. Rosecrans that you took the cigarettes out of the carton and placed them in the oven of the stove? A. You want to know that both of them a liar.

"Q. I want you to answer the question. A. I answered the question. I said both of them are lying.

*    *    *    *    *    *

"Q. Do you deny that you told Lieutenant Boor and Mr. Rosecrans that you took the cigarettes out of the carton and placed them in the oven of the stove? A. Well, I didn't say that.

"Q. Do you deny further that you told Mr. Rosecrans at that time that you received these cigarettes from Floyd Cochran? A. I did not.

"Q. You deny that you said that? A. I said I did not.

"Q. You did not say that; is that right? A. No, I didn't say that."

Thereupon an affidavit was admitted, State's Ex. 7, subscribed and sworn to by appellant after the search and his arrest, as follows:

"State of Idaho } ss        Affidavit
County of Ada }

"Ralph Constanzo, being first duly sworn under oath, deposes and says: That he makes the following statement of his own free will and without duress, promise of reward or leniency in any manner whatsoever, knowing that whatever he now says can and may be used against him now or at a later time in court and having been advised of his right to counsel;

"That on the 11th day of July, about 10 a.m. o'clock one Floyd Cochrane, gave him certain cartons of cigarettes to keep; That Cochrane asked him to keep the cigarettes in the stove in the basement of the Roma Inn in order to keep the cigarettes cold; That he thereupon placed the cigarettes in the stove in the basement of the Roma Inn and placed the cardboard box that they were in next to the stove; that on the 13th day of July 1953 he gave permission to Frank Boor and Floyd Rosecrans to search the Roma Inn; that when the said cigarettes were discovered he placed his initials on each of the cartons.

"s/ R Constanzo
"(Seal)
"Subscribed to and sworn before me this 13th day of July, 1953.

s/ J. Charles Blanton

"Witnesses: Floyd Rosecrans
"Doc House
"Frank Boor"

Appellant assigns as error the admission of the affidavit, because he testified he could not read; therefore, couldn't and didn't know what was in the affidavit and that he had not been advised of his rights before he made it. Such contentions did not render the affidavit inadmissible, State v. Garney, 45 Idaho 768, 265 P. 668; State v. Wilson, 51 Idaho 659, at page 667, 9 P.2d 497; State v. Campbell, 70 Idaho 408, at page 416, 219 P.2d 956; State v. Spencer, 74 Idaho 173, 258 P.2d 1147, and there was thus merely a conflict as to what the Police Officers testified appellant told them, his affidavit, and what appellant denied telling them.

The above testimony, evidence, and finding the stolen cigarettes in appellant's possession on the 13th, and their condition and appearance, (the burglary having been on the 8th) constituted circumstances sufficient to sustain the verdict. People v. Juehling, 10 Cal.App.2d 527, 52 P.2d 520; People v. Rossi, 15 Cal.App.2d 180, 59 P.2d 206, at page 207; People v. Jacobs, 73 Cal.App. 334, 238 P. 770.

Appellant urges Instruction No. 11 [1] was erroneous, because the last clause did not contain the words "upon any reasonable

---

1. "No. 11.
"In order to justify a conviction based solely on circumstantial evidence, the circumstances must be consistent with the guilt of the defendant and inconsistent with his innocence, and incapable of explanation on any other reasonable hypothesis than that of guilt. If the evidence can be reconciled with the theory of innocence, and also with that of guilt, the law requires that the theory of innocence be adopted. But although to sustain a conviction on circumstantial evidence, the circumstances must be consistent with guilt and inconsistent with innocence, the evidence need not demonstrate guilt beyond the possibility of innocence, and, if the circumstances proved produce moral conviction to the exclusion of every reasonable doubt, they need not be absolutely incompatible with innocence of the accused."

"hypothesis." The Instruction as given sufficiently comprehended this requirement by so stating in the first part and it was unnecessary to repeat it; therefore, Instruction No. 11 was not erroneous. State v. McLennan, 40 Idaho 286, at page 302, 231 P. 718; State v. Dawn, 42 Idaho 210, at page 213, 245 P. 74; State v. Healey, 45 Idaho 73, at page 77, 260 P. 694; State v. Yancey, 47 Idaho 1, at page 4, 272 P. 495; State v. Farris, 48 Idaho 439, at page 443, 282 P. 489; State v. Carlson, 53 Idaho 139, at page 147, 22 P.2d 143.

The statutory sentence for receiving stolen property is:

"* * * punishable by imprisonment in the state prison not exceeding five years, or in the county jail not exceeding six months, or by fine not exceeding $1,000, or by both such fine and imprisonment." Section 18–4612, Idaho Code.

The court sentenced appellant to a term of not less than five years in the state prison.

Though not raised by appellant, in view of the meagerness of the testimony as to appellant's guilt, and the comparative value of the stolen property received, the sentence as excessive is reduced to three months in the County jail and a fine of $500.

No reversible error appearing, the judgment is affirmed as modified.

PORTER, C. J., and TAYLOR and KEETON, JJ., concur.

THOMAS, J., sat, but did not participate in the opinion.