673 P.2d 71

**STATE of Idaho, Plaintiff-respondent,**

v.

**Frank SCHROM, Defendant-appellant.**

**No. 14069.**

Supreme Court of Idaho.

Dec. 2, 1983.

---

William B. Taylor, Jr., Grangeville, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Justice.

Appellant appeals the action of the trial court in committing appellant to the Board of Corrections to serve a six-year sentence after the court refused to extend its jurisdiction beyond the 120-day retained jurisdiction allowed by I.C. § 19–2601. Appellant argues that he was wrongfully deprived of a probationary status. We affirm.

Appellant was convicted of possession of stolen property consisting of tires taken from a logging trailer which was also stolen. The trial court, on July 30, 1980, orally sentenced appellant to six years in the penitentiary, but retained jurisdiction for 120 days suggesting that appellant cooperate with police in locating the logging trailer itself. Written judgment of conviction was entered August 11, 1980. To facilitate cooperation, the court ordered appellant's custody to remain with the Idaho County sheriff. On November 7, 1980, the court issued an order setting a hearing to allow it to reconsider the sentence previously imposed. At the November 18 hearing, the court informed the appellant that his conduct had not been of sufficient quality to allow for reconsideration of his sentence. Appellant was given until November 26, 1980, the day when the court indicated its 120-day jurisdiction would expire, to fully cooperate with police to be considered for probation. On November 26, 1980, at a hearing before the court, appellant requested an extension of jurisdiction, pursuant to I.C. § 19–2601, to allow appellant time to submit to a polygraph examination which would support his version of the facts of the case. The trial court refused to extend its jurisdiction for the additional sixty days allowed under I.C. § 19–2601, because the court felt that such an extension could be made only upon application of the Board of Corrections, and such application had not been made.[1] However, the court did "suspend the execution" of appellant's commitment to the Board of Corrections to commence serving his sentence, for an additional two-week period of time, to allow appellant to submit to a polygraph examination; however, pursuant

---

1. The trial court entered an oral judgment on July 30, 1980, and indicated that his 120-day jurisdiction would run from that date. However, written judgment of conviction was not entered until August 11, 1980. If the 120-day period is measured from July 30, then November 26, 1980, is the proper date upon which jurisdiction would expire. However, if the 120-day period is measured from the date the written judgment of conviction was entered, then December 10, 1980, would be the proper date upon which jurisdiction would expire. However, for purposes of this opinion, it is irrelevant which date is used to determine when jurisdiction would expire because such jurisdiction expired automatically, and thus, under the laws of this state, appellant was still not entitled to a hearing to determine whether that jurisdiction should expire.

to that order of suspension, appellant was to remain in custody. On December 10, the trial court issued the first of two orders suspending execution of sentence first until December 30, 1980, and then until January 12, 1981, the defendant remaining in custody.

On January 12, a hearing was held, with the defendant present, where the court indicated that a polygraph examination had been conducted and the court had received the results of the test. The court was apparently dissatisfied with those results and indicated that it would no longer suspend the sentence. On January 13, 1981, the court entered an order committing appellant to the custody of the Idaho State Board of Corrections to begin serving the balance of the sentence. Appellant then filed this notice of appeal, alleging that the trial court's actions in suspending the sentence in effect placed appellant in a probation-like status, and that the revoking of that "probation" without the necessary due process procedures constituted reversible error.

Appellant relies heavily on *State v. Kerrigan*, 98 Idaho 701, 571 P.2d 762 (1977). In *Kerrigan*, the court sentenced the defendant to five years in the penitentiary, but at the same time ordered that execution of the sentence be stayed for a three-month period. The trial court released Kerrigan from custody until the end of that period, at which time he was to appear to show cause why he should not begin his sentence. At the end of the three-month period, when Kerrigan appeared before the court, the court questioned him about several alleged incidents of misbehavior and expressed his dissatisfaction with his conduct. He then ordered Kerrigan to begin serving his sentence.

In *Kerrigan* we held that the actions of the trial court in dealing with Kerrigan placed him in a "probation like" status, thus entitling him to all the attendant due process protections, such as notice and opportunity to be heard, that are required in probation revocation proceedings. We ruled in *Kerrigan* that the trial court must necessarily have been proceeding under I.C. § 19–2601(2).[2] *See State v. Edelblute*, 91 Idaho 469, 424 P.2d 739 (1967).

The present case is factually distinguishable from *Kerrigan*. Here, the trial court acted under I.C. § 19–2601(4), retaining jurisdiction for 120 days, and maintaining appellant in custody during that time. However, Kerrigan was released for the three months that his sentence was suspended, as a probationer would be. In addition, in this case the trial court at several times specifically declined to place appellant in a probationary status. At sentencing on July 30, 1980, the court specifically said that it "had considered the possibility ... of probation on your case or withheld judgment." However, the court indicated that it was not willing at that time to put the appellant on probation. It indicated that appellant would have to further cooperate with authorities before he would get any different consideration. At a hearing on November 18, 1980, the court again discussed the possibility of probation.

"I attempted to make it clear that the primary condition the Court would consider for releasing you on probation would be that you indicated to the Court your willingness to reveal the truth about this matter and to face up to the facts in this situation involving the taking of that property. This required your cooperation with the law enforcement people upon conditions that would not incriminate you as to other—any other crimes or charges. The jury in your trial, as I have reminded you before, totally disbelieved your story and I have to totally disbelieve your story

2. "19–2601. **Commutation, suspension, withholding of sentence—Probation.**—Whenever any person shall have been convicted, or enter a plea of guilty, in any district court of the state of Idaho, of or to any crime against the laws of the state, except those of treason or murder, the court in its discretion, may:

. . . .
"2. Suspend the execution of the judgment at the time of judgment or at any time during the term of a sentence in the county jail and place the defendant on probation under such terms and conditions as it deems necessary and expedient . . . ."

as well. In my opinion, to be eligible for probation, you have to indicate to the Court some recognition of your wrongdoing and some willingness to change. You have not demonstrated this to the Court and as a result I am going to let my jurisdiction over your case expire on July 26—I'm sorry—on November 26. It's the last day that I will have jurisdiction of your case."

The above quotation clearly demonstrates that the trial court would not consider probation for the appellant until he cooperated with the authorities. On November 26, 1980, with the court of the opinion that its jurisdiction would expire on that date unless something were done, appellant's counsel asked for an additional period of time to allow appellant to take a lie detector test to prove to the court that he was telling the truth. The court was unwilling to further extend its jurisdiction under I.C. § 19–2601, but did order a two-week suspension in the execution of the judgment to allow appellant to take the test. Again, the trial court was not placing appellant on probation, or even placing him in a probation-like status, but merely allowing more time to appellant to give him every opportunity to comply with the conditions that the court had previously imposed as requirements for appellant to be considered for probation. Appellant remained in custody during this time.

This case more closely resembles *State v. Ditmars*, 98 Idaho 472, 567 P.2d 17 (1977), cert. den. 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 793 (1978). In *Ditmars* the defendant was sentenced to five years in prison, with the trial court retaining jurisdiction for a 120-day period. At the end of that period of time the trial court issued an order relinquishing its jurisdiction and effectuating the sentence previously announced without giving notice and allowing the defendant time for rebuttal. This Court held that in that situation the defendant was not denied any due process rights required under *State v. Edelblute, supra.* We noted that "[a]t the termination of the 120 day period, the court's retained jurisdiction of the defendant is not 'revoked' but merely expires and the require-

ments of *Edelblute* and *Moore* [*State v. Moore,* 93 Idaho 14, 454 P.2d 51 (1969)] in a probationary situation need not be provided." 98 Idaho at 474, 567 P.2d 19. In the present case the trial court had retained 120 days of jurisdiction over appellant. After 120 days that retained jurisdiction automatically expired, and it expired without the trial court having altered appellant's sentence. Although the trial court attempted to act after its jurisdiction had expired, anything it did after that expiration point could have no effect on appellant's sentence. Whether the delay between the time of expiration of the trial court's retained jurisdiction and appellant's final commitment to the State Board of Corrections was in violation of some right of appellant is not an issue here. We do not purport to pass on the validity of that delay, nor upon the validity of the two suspension orders entered on December 10 and December 30, 1980. We merely hold that the actions of the trial court never resulted in appellant obtaining a probation-like status, and since the court's 120-day retained jurisdiction was not extended, it automatically expired under *State v. Ditmars, supra,* and the trial court was not required to give the appellant notice and an opportunity to be heard before he was remanded to the Board of Corrections. Thus, no violation of appellant's due process rights occurred.

Affirmed.

DONALDSON, C.J., and SHEPARD, J., concur.

HUNTLEY, J., concurs in result.

BISTLINE, Justice, concurring in part.

I.

Other than for professional fences, at whom the statute is presumably aimed, the crime of possession of stolen property is often the result of pure happenstance, and probably more often happenstance coupled with an attractive bargain. Here we have nothing before us to show that Mr. Schrom was a professional fence. Contrariwise, we have the fact that the district judge con-

sidered Schrom a candidate for probation. Accordingly, at oral sentencing the court retained 120 days retained jurisdiction, and instead of remanding him over to the sheriff for delivery to state prison officials, ordered him to remain in the sheriff's custody. Thereafter, the court ordered the sheriff to deliver Mr. Schrom to the Department of Corrections, continuing to retain 120 days jurisdiction. Then the court ordered Mr. Schrom back into the hands of the sheriff so he could appear at a court hearing. Then the court, apparently still of the view that Mr. Schrom was still a candidate for probation, and was a trustworthy person, ordered his release from any confinement for Thanksgiving Day. A month later, the judge ordered Mr. Schrom's release from custody for Christmas Day.

In the end, the district judge concluded that Mr. Schrom had not cooperated with the authorities, which is to say he declined to put the finger on the culprit who stole the logging trailer, *assuming* that he knew, a fact which is *not* established by the record. Assuming that he did know, for his misguided loyalty he was ordered sent off to prison for the six-year term which for over six months was poised over his head like the very sword of Damacles. Assuming he did not know the culprit, it would appear that Mr. Schrom, who justified the court's belief that he would not run when freed from confinement, is paying a rather heavy price for three tires he was neither charged with nor convicted of having stolen.

The case is reminiscent of *State v. Talmage*, 104 Idaho 249, 259, 658 P.2d 920, 930 (1983), where the district judge confined the defendant, instead of retrying him, as coercion to induce the defendant to answer the prosecutor's questions. A problem I had in that case—troubling no other member of this Court—and encounter again today, is wondering to what extent a district judge may properly become involved in aiding law enforcement in the prosecution, and here the apprehension, of criminals.

## II.

The majority sees this case as not like *State v. Kerrigan,* 98 Idaho 701, 571 P.2d 762 (1977). I disagree. There is a strong similarity, although under the facts of this case, I do not see any error as to the procedures we review. I believe that the district courts not only can, but should, utilize the 120-day retained jurisdiction procedure, but remain skeptical that it should be used as it was used here. If the district judge thought that the possession of stolen tires merited six years in the penitentiary, so be it, but I remain troubled that such a sentence should have been used as a club to coerce information which Mr. Schrom may or may not have been able to give, assuming that he knew and would possibly be willing to incriminate a friend or acquaintance.

Accepting counsel's contention that his client, Mr. Schrom, had acquired a probationary status, the only term of that probation was that he "cooperate." The district court concluded that he had not done so, making it difficult to see how Mr. Schrom was deprived of any rights as a probationer.

Putting aside such considerations as the requirement of "cooperation" placed upon Mr. Schrom, and had this element not crept into the sentencing process, it is difficult to believe that the court would have imposed a six-year term. So believing, I would feel much more comfortable if this Court were to reduce the sentence to a two-year term. To tell Mr. Schrom, who we were told was allowed bail pending appeal, that he must now turn himself in is somewhat akin to keeping a man on death row for ten years and then executing him.

It is true that excessiveness of sentence has not been raised as an issue. It is equally true that in *State v. Otto*, 102 Idaho 250, 629 P.2d 646 (1981), this Court, sua sponte, raised the issue that solicitation to commit murder was not a crime, and on that issue reversed a conviction of attempted first degree murder. The Court is not powerless to reduce a sentence which appears to have been imposed for a purpose other than pun-

ishment and which is on its face excessive.[1] I would reduce the sentence. If the Court does not, Mr. Schrom, on remand, may find some relief by a Rule 35 motion.

---

1. In *State v. Constanzo,* 76 Idaho 19, 276 P.2d 959 (1954), a unanimous court, in an opinion authored by Justice Givens, did exactly that, sua sponte, in a case much like this, absent only the attempt to coerce the defendant to "cooperate." Five years in the penitentiary was reduced to three months in the county jail and a fine of $500.