674 P.2d 432

STATE of Idaho, Plaintiff-Respondent,

v.

Kyle V. FOWLER and Ronald David Mayne, Defendants-Appellants.

No. 14388.

Court of Appeals of Idaho.

Dec. 5, 1983.

Gaylen L. Box, Pocatello, for defendants-appellants.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Stephen J. Gledhill, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

This is an appeal by certification from a district court order denying a motion to suppress evidence seized under a search warrant and a motion to dismiss criminal charges against the appellants. The issues relating to the suppression motion are: (A) whether the affidavit for the search warrant established probable cause; (B) whether the affidavit contained justification for

nighttime execution of the warrant; and (C) whether the search and seizure exceeded the scope of the warrant. The issues relating to the dismissal motion are: (A) whether there was excessive delay in bringing appellants before a magistrate for their initial appearance; and (B) whether the state should have been allowed to refile charges against appellants after a magistrate had once dismissed them. We affirm the district court order insofar as it denies the motion to dismiss the charges. We vacate that part of the order relating to the suppression motion and instruct the district court to make further findings on remand.

## I. THE SEARCH WARRANT

On the evening of Thursday, April 3, 1980, T.W. Smart, an investigator of the Idaho Bureau of Narcotics, applied to a magistrate, Honorable Robert W. Bennett, for a search warrant. Smart desired to search the home of Kyle Fowler and his roommate, Ronald Mayne, whom he suspected of trafficking in narcotics. In support of his request for a search warrant, he swore to the following affidavit:

T.W. SMART, being first duly sworn on oath, deposes and says:

That he is a Senior Special Investigator for the Idaho Bureau of Narcotics and that he has been employed by the Idaho Bureau of Narcotics for the past three and one-half years;

That over the past two weeks, your affiant has received information that the occupants at 311 East Chubbuck Rd., in Chubbuck, Bannock County, Idaho, have been suspected of trafficking in narcotics by your affiant and Officers of the Chubbuck Police Department.

On March 31, 1980, your affiant received information that a Chubbuck Police Officer, Officer Carl Richens, had observed on that morning, what appeared to be, based on their mannerisms, persons smoking a marijuana cigarette. Also, at that time, he observed one of the individuals appear to be chopping a vegetable substance and scraping it into a plastic bag. He observed approximately twenty

of these bags filled and stacked on the table.

On April 3, 1980, surveillance was established at the residence at 311 E. Chubbuck Rd., in Chubbuck, Bannock County, Idaho, at approximately 6:30 P.M. by various law enforcement officers of Bannock County, Idaho. Various vehicle registrations were obtained on vehicles observed at the residence. Several of these vehicles were observed to arrive, staying a brief period of time and then leave the area. Three of the vehicles observed were registered to individuals purported to be trafficking in narcotics. Also during this time while the residence was under observation, Sgt. Brad Scott of the Bannock County Sheriff's Office observed one of the individuals who arrived at the residence, walk up to the door and appear to make payment to the individual who answered the door.

That your affiant believes Officer Richens and Officer Scott to be reliable, as they are local law enforcement officers, whom he knows personally.

That based on the above information, affiant makes this Affidavit for the purpose of obtaining a search warrant of the residence located at 311 East Chubbuck Rd., in Chubbuck, Bannock County, Idaho, for the purpose of searching for controlled substances, and/or contraband, which affiant believes may be unlawfully possessed at said premises, and in order to search for rent receipts, envelopes, keys, utility receipts, etc. or other evidence which tends to establish ownership or control of said premises.

That time is of the essence in this matter and therefore, affiant prays that this warrant be issued for a nighttime search to prevent the controlled substances from being consumed, destroyed or sold, or otherwise disposed of.

Magistrate Bennett issued a search warrant which authorized nighttime execution and commanded seizure of "controlled substances." Smart and other law enforcement officers executed the warrant at 11:25 that same night and seized numerous items, including suspected drugs, cash and personal property. Fowler and Mayne were placed under arrest and taken to the Bannock County Jail. They were subsequently charged with possession of marijuana with intent to deliver, I.C. § 37–2732(a)(1)(B), and possession of lysergic acid diethylamide (LSD) with intent to deliver, I.C. § 37–2732(a)(1)(B).

Fowler and Mayne filed a motion to suppress or exclude evidence. The motion was heard by a second magistrate, Honorable William H. Woodland. The motion was granted because Magistrate Woodland concluded that portions of the affidavit did not satisfy the then-existing *Aguilar-Spinelli* rule. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). At the preliminary hearing on May 8, the state presented no further evidence to the court for the determination of probable cause and the magistrate held that the remainder of the affidavit was insufficient by itself to show probable cause. Beyond this, he held that no reasonable cause was shown why the search warrant should be executed at night. The case was dismissed without prejudice.

The state later refiled the same charges against Fowler and Mayne. They filed a new motion to suppress. A hearing was conducted before a third magistrate, Honorable L.R. Schou, and this time the motion was denied. Magistrate Schou held that he did not have the authority to review the determination of probable cause made by the magistrate who had signed the search warrant. Fowler and Mayne were bound over to district court.

Still another motion to suppress was filed, this time in the district court. The district court found that the affidavit demonstrated probable cause for issuance of a search warrant and the suppression motion was denied. Later Fowler and Mayne moved the district court to certify the denial of their motion for immediate appeal to the Idaho Supreme Court. The district court granted the motion and the Supreme

8

Court permitted the appeal by certification. The case was assigned to this court.

## A. PROBABLE CAUSE FOR WARRANT

■ Fowler and Mayne first contend that the search warrant was issued without probable cause in violation of the fourth amendment of the United States Constitution and article I, § 17 of the Idaho Constitution. In evaluating this contention, we note that the validity of a search warrant should not be tested in a hypertechnical manner. *State v. Gomez,* 101 Idaho 802, 623 P.2d 110 (1980), *cert. denied,* 454 U.S. 963, 102 S.Ct. 503, 70 L.Ed.2d 378 (1981). The United States Supreme Court has said:

that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause ...; that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial ...; that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense ...; and that their determination of probable cause should be paid great deference by reviewing courts.... [Citations omitted.]

*Spinelli v. United States,* 393 U.S. at 419, 89 S.Ct. at 590–91. In addition, "[t]he quantum of information which constitutes probable cause ... must be measured by the facts of the particular case." *Wong Sun v. United States,* 371 U.S. 471, 479, 83 S.Ct. 407, 413, 9 L.Ed.2d 441 (1963).

■ The affidavit for probable cause must be evaluated as a whole to determine whether it was sufficient to establish probable cause for the issuance of a search warrant. Furthermore, "affidavits for search warrants ... must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). "A magistrate's determination of probable cause should be accorded great deference by the appellate court.... Similarly, such affidavits should

be tested by standards less rigorous than those governing the admissibility of evidence at trial." *State v. Gomez,* 101 Idaho at 805, 623 P.2d at 113.

■ Fowler and Mayne claim that the affidavit for probable cause was insufficient under the two-pronged test of *Aguilar-Spinelli.* To satisfy this test, an affidavit based at least partially on hearsay must demonstrate the reliability of the source of the information and present a sufficient factual basis for that information. *Spinelli v. United States, supra; Aguilar v. Texas, supra.* RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS § 4.3(a) (1983) (hereinafter referred to as Ringel, Searches & Seizures). After the present case was argued, however, the United States Supreme Court decided *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). There the Court held:

we conclude that it is wiser to abandon the "two-pronged test" established by our decisions in Aguilar and Spinelli. In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations. [Citations omitted.] The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States, supra,* 362 U.S. [257] at 271, 4 L.Ed.2d 697, 80 S.Ct. 725, 78 A.L.R.2d 233.

*Id.* 462 U.S. at ——, 103 S.Ct. at 2332. Therefore, although the two-pronged test is no longer a "rigid requirement," the credibility and basis of knowledge of the informant should still be considered in an evaluation of probable cause.

Idaho Criminal Rule 41(c) reflected the two-pronged analysis of *Aguilar-Spinelli.* Our Supreme Court, however, recently considered the effect of *Gates* upon this rule. *State v. Lang,* 105 Idaho 683, 672 P.2d 561 (1983). In *Lang* the Court held: "We thus abandon the test of *Aguilar* and *Spinelli* and adopt the 'totality of the circumstances' analysis as the standard by which the magistrates of Idaho will determine the existence of probable cause." *Id.* at 684, 672 P.2d 562. We will therefore evaluate the affidavit in this case to determine whether "the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 684, 672 P.2d 562.

█ We recognize first that paragraph three of the affidavit is nothing more than a "bald and unilluminating assertion." *See Spinelli v. United States,* 393 U.S. at 414, 89 S.Ct. at 588. In *Spinelli,* the affiant stated the suspect was "known" to be a "bookmaker, an associate of bookmakers, a gambler and an associate of gamblers." Because this statement was not supported by any facts, the United States Supreme Court held that it was "entitled to no weight in appraising the magistrate's decision." *Id.* Even under *Gates* there are "limits beyond which a magistrate may not venture in issuing a warrant." A wholly conclusory statement will not "provide the magistrate with a substantial basis for determining the existence of probable cause...." *Illinois v. Gates,* 462 U.S. at ——, 103 S.Ct. at 2332. While the statement in the Smart affidavit suffers from the same defect and cannot support a finding of probable cause by itself, we are not required, under *Gates* and *Lang,* to ignore it completely.

█ Applying the "totality of circumstances" test, we find that the affidavit clearly indicated that controlled substances were present in large quantities at a certain address on March 31, 1980. The affidavit asserts that Officer Richens observed persons apparently smoking marijuana and another "chopping a vegetable substance and scraping it into a plastic bag." Fowler and Mayne argue that Smart did not receive this information directly from Richens, but

through an unnamed informant whose credibility and basis of knowledge had not been established. However, while these factors are highly relevant in determining the value of the affidavit, they are not "entirely separate and independent requirements to be rigidly exacted in every case...." *Illinois v. Gates,* 462 U.S. at ——, 103 S.Ct. at 2327–28. In any case, interpreting the affidavit in a commonsense and practical manner, we hold that Smart was not relying on information channeled by Richens through an unnamed informant, but rather was relying upon information supplied directly by Richens.

The affidavit further indicated that on April 3, 1980 controlled substances were being sold at the address in question. Paragraph five sets forth the observations of various police officers who witnessed vehicles arrive at the address, stay a short time, then leave. One officer observed an individual arrive at the address, walk to the door and appear to make a payment to the person who answered the door. "[O]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca,* 380 U.S. at 111, 85 S.Ct. at 747. Giving due deference to the decision of the magistrate, we conclude that he had a substantial basis for determining that probable cause existed for issuing a search warrant.

### B. NIGHTTIME SEARCH

Fowler and Mayne next contend that there was insufficient justification for a nighttime search. When the search warrant here was issued, I.C.R. 41(c) stated, in part: "The warrant shall be served in the daytime unless the warrant directs that it may be served anytime. The issuing authority may, by appropriate provision in the warrant, and *for reasonable cause shown,* authorize its execution at times, other than daytime." [Emphasis added.] This purportedly created a conflict with I.C. § 19–4411 which provides: "The magistrate must insert a direction in the warrant that it be

served in the day time *unless the affidavits are positive* that the property is on the person or in the place to be searched, in which case he may insert a direction that it be served at any time of the day or night." [Emphasis added.]

 We do not, however, see these provisions as contradictory, but as complementary. Accordingly, to justify nighttime execution of the warrant, the *affidavit* must both show reasonable cause for conducting the search at night, and must be positive that controlled substances are in the place to be searched. While we recognize that a search in the nighttime is a more serious invasion of privacy than a search in the daytime, the magistrate's finding of reasonable cause will not be disturbed on appeal absent an abuse of discretion. *State v. Lindner,* 100 Idaho 37, 592 P.2d 852 (1979). In defining "reasonable cause," the Fifth Circuit has said:

Appellants contend that the requirement that "reasonable cause" must be shown to justify a nighttime search under a warrant means that some such substantial showing be made for the need for acting on such warrant at night. Appellant would equate this requirement with the requirement for a showing of probable cause of the issuance of the warrant. Here, of course, probable cause must be shown for the issuance of the warrant, but beyond that the *only requirement* is that there be cause for carrying on the unusual nighttime arrest or search that, upon showing made, convinces the magistrate that it is reasonable. [Emphasis added.]

*United States v. Curry,* 530 F.2d 636–37 (5th Cir.1976). Our Supreme Court adopted this definition in *Lindner.*

*Lindner* also discussed the positiveness requirement.

This statute does not require that the affiant be positive that the property is in the place to be searched before a magistrate can authorize nighttime execution of a search warrant. The subjective thoughts of the affiant are not controlling. [Citations omitted.] Although we

are not bound by the decision of a federal court on this matter, we are persuaded that the correct construction of the term positive as used in I.C. § 19–4411 was announced in *United States v. Daniels,* 10 F.R.D. 225, 228 (D.C.N.J.1950):

It is our opinion that the rule requires nothing more than an explicit statement, supported by positive evidence, as distinguished from negative evidence, "that the property is in the place to be searched." The explicit statement may not rest upon inferences drawn from the absence of evidence. The rule requires averments of fact sufficiently persuasive to support a reasonable inference that the property is in fact on the premises. A more rigid construction would require proof beyond a reasonable doubt that the property is in the place to be searched. Such a construction would enable the criminal to completely conceal an illegal enterprise behind an insurmountable barrier, provided, of course, he pursued it only at night. . . .

100 Idaho at 42–43, 592 P.2d at 857–58.

In *State v. Jackson,* 117 Ariz. 120, 571 P.2d 266, 268 (1977), the Arizona Supreme Court held there was sufficient "reasonable cause" to justify a nighttime search supplied by an affidavit which alleged that the suspects "are selling marijuana to persons in the Phoenix, Arizona area during all times of the day and night. . . ." *Accord State v. Lindner, supra.* It has been held in other cases that nighttime drug sales provide sufficient justification for a nighttime search. *E.g., Solis v. Superior Court of Monterey County,* 63 Cal.2d 774, 48 Cal. Rptr. 169, 408 P.2d 945 (1966). *See* HALL, SEARCH AND SEIZURE, § 19:13 (1982).

 The affidavit for the search warrant stated that time was of the essence and requested that nighttime search be authorized "to prevent the controlled substances from being consumed, destroyed or sold, or otherwise disposed of." The affidavit made explicit statements indicating that controlled substances were in the place to be searched. After surveillance was estab-

lished in the evening of April 3, it appeared, from the affidavit, that several purchases were made. It was reasonable to believe that a nighttime search was necessary because the controlled substances might not be present on the premises at daybreak. *See State v. Lindner, supra.* We therefore hold that this affidavit met the requirement of both I.C. § 19–4411 and I.C.R. 41(c), justifying the authorization of nighttime execution of the warrant.

## C. PROPERTY SEIZED

Fowler and Mayne next contend that certain items of personal property seized under the search warrant should be suppressed even if the warrant itself is upheld. They claim that the warrant limited the property that could be seized to "controlled substances" and that all other property lay beyond the scope of the warrant. The state argues that the description in the affidavit controlled which property could be seized.

The district judge in his memorandum and order of May 1, 1981 denied Fowler and Mayne's motion to suppress. However, he also stated: "The Court does find that there were items taken in the search which should not have been taken and these items would be suppressed insofar as the present charges are concerned.... A formal Order will be hereafter made suppressing certain of the items after a conference by the Court with counsel." No "formal order" appears in the record. Therefore, we must remand to the district court for a determination of the items to be suppressed. We offer the following guidance for making this determination.

■ Search warrants must describe the evidence to be seized. U.S. Const. amend. IV; *Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); Idaho Const. art. I, § 17; *State v. Wolf,* 102 Idaho 789, 640 P.2d 1190 (Ct.App.1982). The police, however, are not limited to seizing only those items specifically described in the warrant. *Johnson v. United States,* 293 F.2d 539 (1961), *cert. denied,* 375 U.S. 888, 84 S.Ct. 167, 11 L.Ed.2d 118 *See also State v. O'Campo,* 103 Idaho 62, 644 P.2d

985 (Ct.App.1982). If seizures were so restricted, "it is obvious that there could never be a valid seizure of anything not described in the search warrant. However, the *Marron* doctrine has generally not prevailed when the search and seizure was considered reasonable under all the circumstances." *Gurleski v. United States,* 405 F.2d 253, 257 (5th Cir.1968), *cert. denied,* 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769 (1969). Instead, all that is required is that an item seized bear "a reasonable relation to the purpose of the search." *Mesmer v. United States,* 405 F.2d 316, 319 (10th Cir. 1969).

In the present case, the magistrate authorized seizure of "controlled substances." In his affidavit, Smart requested a warrant "for the purpose of searching for controlled substances, and/or contraband, which affiant believes may be unlawfully possessed at said premises, and in order to search for rent receipts, envelopes, keys, utility receipts, etc. or other evidence which tends to establish ownership or control of said premises." The state, relying on *State v. Constanzo,* 76 Idaho 19, 276 P.2d 959 (1954), maintains that all of the items were validly seized because they were covered by the broader description in the affidavit. We disagree.

■ Our Supreme Court in *Constanzo* said:

> The affidavit is the sole basis and justification for the issuance of the warrant and the description in the affidavit controls and *circumscribes* the description in the warrant.
>
> . . . .
>
> [T]he search warrant *may not go beyond* the description in the affidavit. If, however, the description in the warrant reasonably encompasses the description in the affidavit, the search to the extent only of the description in the affidavit is not invalid. [Emphasis added.]

76 Idaho at 22, 276 P.2d at 960. In other words, where the description in the warrant is broader than that in the affidavit, the

description in the affidavit circumscribes what may be seized under the warrant.

On the other hand, where the description in the warrant is narrower its language controls to the exclusion of the affidavit. "Therefore, while the 'affidavit' informs us of the purpose of the search, the description of the property to be seized is limited to the language of the warrant itself." *State v. O'Campo,* 103 Idaho at 66, 644 P.2d at 989. We recognize, however, that if an affidavit is incorporated into the warrant, it may supplement the language of the warrant. As we noted in *O'Campo:*

> The parties in this case have cited no Idaho authority defining how an affidavit must be identified to a warrant in order to supplement the descriptive language in the warrant. However, federal courts of appeal have required that the affidavit be physically attached and incorporated into the warrant by reference. [Citations omitted.] Without deciding whether attachment and incorporation by reference should be required in Idaho, we hold, in this case, that no satisfactory connection of any kind between the warrant and the "affidavit" was established.

*Id.* Similarly, in the present case, the description in the warrant is narrower than the affidavit, and no satisfactory connection of any kind between the affidavit and the warrant has been established. Therefore the description in the warrant controls.

When a defendant challenges a seizure, he has the burden of showing that the items seized were beyond the scope of the warrant. Once he has made an initial showing, the burden shifts to the state to demonstrate a legal justification for the seizure. Ringel, Searches & Seizures § 20.-4. The most common legal justification for the seizure of items not covered by the search warrant is that the items were in plain view. This is the justification advanced by the state in this case.

The plain view doctrine consists of three elements: (1) at the time of the officer's observation he must be in a place where he had a legal right to be; (2) the items seized must be in "plain view"; and

(3) the incriminating nature of the items must be immediately apparent. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Pontier,* 95 Idaho 707, 518 P.2d 969 (1974). The first two elements appear to be satisfied in this case. The third element then is the key. It requires that an officer of reasonable caution, under the cumulative facts of the case, recognize the items as probably being related to criminal activity. *United States v. Chesher,* 678 F.2d 1353 (9th Cir.1982); *United States v. Blake,* 484 F.2d 50 (8th Cir. 1973). Ringel, Searches & Seizures § 6.5(a)(1). Whether the plain view doctrine applies to any of the items seized is a question for the district court, initially, to determine. We remand the case so this determination can be made.

## II. MOTION TO DISMISS

Fowler and Mayne were arrested late Thursday night or early Friday morning and were scheduled to be taken before a magistrate on Friday afternoon for their initial appearance. Neither a complaint nor an arrest warrant, however, existed at the appointed time. Later that day, a complaint was signed and a magistrate issued an arrest warrant. Although Fowler and Mayne each received a copy of the complaint against them, they were not taken before a magistrate for their initial appearance until the following Monday. They filed a motion to dismiss. Arguments were presented and the motion was denied.

They contend their motion to dismiss should have been granted. First, they allege there was an unnecessary delay between their arrest and initial appearance. Second, they argue that the state should not be permitted to refile, for improper motives, the charges previously dismissed. For reasons set out below, we hold that the district court properly denied the motion to dismiss.

### A. UNNECESSARY DELAY
Idaho Code § 19–615 states:

When an arrest is made without a warrant by a peace officer or private person the person arrested must, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the arrest is made, and an information [complaint], stating the charge against the person, must be laid before such magistrate.

At the time Fowler and Mayne were arrested, I.C.R. 5(a) stated: "If a person is arrested without a warrant, he shall be brought before a magistrate, and a complaint shall be filed forthwith."

We assume without deciding that the delay in the present case was unnecessary. However, Fowler and Mayne still cannot prevail on their motion to dismiss because they have not shown they were prejudiced by the delay. Under FED.R. CRIM.P. 5(a),[1] which is similar to the former I.R.C.P. 5(a), a showing of prejudice is required before relief will be granted for unnecessary delay. *United States v. Montes-Zarate,* 552 F.2d 1330 (9th Cir.1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978); *Theriault v. United States,* 401 F.2d 79 (8th Cir.1968), *cert. denied,* 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969). The defendant has the burden of showing prejudice. *United States v. Brown,* 459 F.2d 319 (5th Cir.1971), *cert. denied,* 409 U.S. 864, 93 S.Ct. 155, 34 L.Ed.2d 111 (1972). Furthermore the Montana Supreme Court, in interpreting a statute similar to I.C. § 19–615,[2] has said "we will not hesitate to fashion an appropriate remedy, '[i]f the defendant can show prejudice or a deliberate attempt by the prosecution to circumvent a speedy arraignment.'" *State v. Plouffe,* 646 P.2d 533, 537 (Mont. 1982), quoting *State v. Rodriquez,* 628 P.2d 280, 284 (Mont.1981). *See also People v. Heintze,* 200 Colo. 248, 614 P.2d 367 (1980).

Fowler and Mayne have failed to carry their burden. They allege only that delay occurred. To demonstrate prejudice Fowler and Mayne must show that the unnecessary delay reasonably contributed to the acquisition of inculpatory evidence, *State v. Heintze, supra; United States v. Montes-Zarate, supra;* or resulted in the loss of exculpatory evidence; or that the delay otherwise affected their ability to present a defense. *Cf. State v. Kruse,* 100 Idaho 877, 606 P.2d 981 (1980) (discussing the requirements for dismissal under I.C.R. 48). The record before us contains no such showing.

## B. REFILING OF CHARGES

Finally, Fowler and Mayne argue that their motion to dismiss should have been granted because the state illegally refiled the charges. Idaho Code § 19–3504 provides that an action may be dismissed on the motion of the court or the prosecuting attorney. Under I.C. § 19–3506, an order for dismissal is a bar to another prosecution for the same offense, unless the offense is a felony. In *Stockwell v. State,* 98 Idaho 797, 573 P.2d 116 (1977), the appellant challenged the refiling of charges in a habeas corpus proceeding. Our Supreme Court directed that the writ be quashed because § 19–3506 specifically contemplated "that a second criminal complaint may be filed in a felony case following dismissal of the first criminal action." *Id.* at 803, 573 P.2d at 122.

*Stockwell* recognized that refiling charges may violate due process if done for the purpose of harassment, delay or forum-shopping. *Stockwell* further quoted with approval *Nicodemus v. District Court of Oklahoma County,* 473 P.2d 312 (Okl.Cr. App.1970), which said:

1. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041.

2. Mont.Code Ann. § 46–7–101. Any person making an arrest under a warrant shall take the arrested person without unnecessary delay before the judge issuing the warrant or, if he is absent or unable to act, before the nearest or most accessible judge of the same county.

This is not to say that when new evidence becomes available or when the prosecutor believes—in good faith—that the magistrate committed error, the charge should not be refiled; but absent such circumstance, the continued refiling—numerous times—of a charge which has been dismissed by a magistrate is not to be desired.

*Id.* at 316. The state in the present case asserts its belief that the magistrate committed error in the prior case by deciding the evidence seized would ultimately be suppressed. Fowler and Mayne contend, however, that the state was forum-shopping in an attempt to find a more sympathetic magistrate. These are contentions only, unsupported by the record. There is no evidence to show that the state was not acting in a good faith belief that the magistrate had committed error. The facts in the present case do not "approach such an offensive degree to be violative of fundamental fairness." *Nicodemus v. District Court of Oklahoma County*, 473 P.2d at 316. The motion was properly denied.

The order of the district court denying the motion to dismiss is affirmed. That part of the order denying the motion to suppress is vacated. The district court is instructed to determine which of the items seized must be suppressed because they are beyond the scope of the warrant and do not come within the exception of the plain view doctrine.

WALTERS, C.J., and BURNETT, J., concur.