718 P.2d 1286

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Walter Ray FOSTER,
Defendant-Appellant.**

**No. 15593.**

Court of Appeals of Idaho.

May 8, 1986.

Petition for Review Denied
July 29, 1986.

Lloyd J. Webb, Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

ON DENIAL OF PETITION FOR REHEARING

This Opinion Supercedes the Prior Opinion Issued January 2, 1986, Which is Withdrawn.

WALTERS, Chief Judge.

Walter Ray Foster was convicted by a jury of burglary in the first degree and of grand theft. On appeal, Foster raises two issues challenging his conviction: (1) whether the trial court erred in admitting evidence obtained pursuant to a search, with a warrant, of Foster's car; (2) whether Foster was denied a fair trial because of jury bias. We hold that the evidence was admissible. We also hold that nothing in the record indicates that Foster did not have a fair trial by an impartial jury. We affirm.

I

First, we address the admissibility of evidence seized from Foster's car. The record reveals the following facts. During the weekend of October 29, 1983, the home of Robert and Sharon Knudsen was burglarized. Many items of personal property were stolen, including guns, coins, and jewelry. Foster was a suspect in the burglary.

On November 2, 1983, Foster was involved in a traffic accident near Pocatello, Idaho. Foster's automobile was seriously damaged. While the accident was being investigated by a Pocatello police officer, another officer arrived at the accident scene and decided to seize the Foster vehicle, which he suspected contained items from the Knudsen burglary. Foster objected to the seizure and indicated he wanted the vehicle, towed to the property of one Earl Ellis. The vehicle was instead towed to the police station. Meanwhile, other officers obtained a warrant to search the car. The search disclosed many of the items stolen from the Knudsen home. Prior to trial, Foster sought to have this evidence suppressed as being the product of an illegal search and seizure. The trial judge denied Foster's suppression motion and allowed the evidence to be admitted. On appeal, Foster challenges the propriety of allowing this evidence to be admitted. His challenge has two aspects. Foster first contends that the initial, warrantless seizure of the car was illegal. Second, Foster asserts that there was not probable cause for issuing the warrant to search his car.

Prior to addressing the precise issues presented by Foster, we must first resolve another question posed by the facts of this case. At first blush, this case would seem to render itself subject to consideration under some form of vehicular search analysis. *See Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 578 (1982); *California v. Carney,* — U.S. —, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). However, testimony at trial indicated that the car was severely damaged in the accident and ultimately had to be towed to remove it from the accident scene. In our view, the car had been rendered immobile as a result of the accident. Therefore, the reasoning often applied in vehicular cases, stemming

from a car's inherent mobility, is not applicable to this situation. Rather, having been rendered immobile, the car should more appropriately be viewed as a container. Accordingly, the validity of the seizure and subsequent search should be judged under standards applicable to containers, not automobiles.

■ As to the initial seizure, it is well established that where the police have probable cause to believe a container holds contraband and there are exigent circumstances, the fourth amendment permits seizure of the container while the police obtain a search warrant. *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Here, there were exigent factors that made the seizure necessary. Based on statements by the brother of Foster's alleged accomplice, the police suspected Foster and Burk of the burglary of the Knudsen home. The officers also knew that the son of one of Foster's friends, who owned a jewelry store in Utah, had recently arrived in Pocatello. The Pocatello police had contacted the police departments of Salt Lake City and Ogden, Utah, and asked them to be watching for Burk and Foster. Burk's brother also reported that Foster was going to Boise to sell some of the stolen items. At the wreck, Foster was adamant about not wanting the police near his car. Foster wanted a wrecker to tow the car to the property of Earl Ellis, a person whom the police believed had been involved recently with stolen goods. One officer testified that it would have taken probably less than five minutes for the car to be moved so that the police could not observe it.

Foster asserts that the officer who actually "seized" the vehicle did not know all these facts personally, and, therefore, did not have probable cause to seize the vehicle. However, probable cause is based on the knowledge of the "officers" doing the search and seizure, not any one individual. *See, State v. Cook*, 106 Idaho 209, 677 P.2d 522 (Ct.App.1984). Here, the evidence clearly indicated that the seizure and search was the result of several officers working together. There was justification for the initial seizure and we hold that the seizure was legal.

After securing the car and having it towed to the police station, the officers obtained a warrant to search the car. Foster asserts that there was no probable cause for issuing the warrant and that the affidavit supporting the warrant was deficient. We note first that the magistrate's determination of probable cause is granted great deference by the appellate court. *State v. Lang*, 105 Idaho 683, 672 P.2d 561 (1983). We review the record to insure that the magistrate had a substantial basis for finding that probable cause existed. *Id.* Here, we hold that the magistrate did have the substantial basis for determining that probable cause existed for issuing the warrant.

■ The magistrate properly applied a "totality of the circumstances" test in evaluating the affidavit supporting the search warrant. *State v. Lang, supra; State v. Fowler*, 106 Idaho 3, 674 P.2d 432 (Ct.App. 1983). A review of that affidavit discloses that the victim of the robbery, Mr. Knudsen, had been contacted by someone identifying himself as Dave Burk. Mr. Knudsen reported to the prosecutor's investigator that Dave Burk told him that his brother, Val, and Foster were responsible for the burglary. Dave Burk further told Knudsen that Foster had some of the stolen items and was on his way to Boise to sell them. Also, the affidavit discloses that Mrs. Knudsen had reported that Val Burk had attempted to sell some of the stolen goods to her brother-in-law. The affidavit also states that the affiant had personal knowledge that Val Burk and Foster were companions and associates. It reveals that Foster was acting nervously at the wreck, that he did not want officers near his wrecked car, and that he wanted the car towed to Earl Ellis' property. The affidavit states that Ellis had recently pled guilty

to grand theft by possession of stolen property. While some statements in the affidavit are debatably conclusory in nature, and must be viewed with caution, we are not required to ignore them completely. *Fowler*, 106 Idaho at 9, 674 P.2d at 438. We conclude that the affidavits as a whole provided a substantial basis for the magistrate to conclude that probable cause existed. The magistrate did not abuse his discretion.

Foster also offers on appeal the challenge that the affidavit does not meet the standards established by *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 702 (1984). *Leon* held that evidence discovered by officers acting in good faith pursuant to a warrant was admissible, even though the warrant was later found to be unsupported by probable cause. The extent to which *Leon* is applicable under the Idaho Constitution has not been decided. *See State v. Lewis*, 107 Idaho 616, 691 P.2d 1231 (1984). Because we hold that the affidavit was sufficient to establish probable cause, we need not reach that issue.

## II

■ Addressing the jury bias issue, Foster asserts that one of the jurors, Higley, failed to disclose during voir dire that her parents' home had been burglarized—allegedly by Foster's son. Although an exact question on this subject was not directed to Higley, Foster argues that she had an affirmative duty to reveal that fact. Foster insists that this situation presented such bias that he should be given a new trial. The district judge denied Foster's motion for a new trial, and Foster now asks us to review that ruling.

Analyzing this issue requires us to look at several steps in the voir dire process and the trial as it progressed. During voir dire, the trial judge initially asked the entire jury panel a series of questions. Then, the prosecutor (Mr. Moss) and Foster's counsel (Mr. Traylor) were allowed to ask a series of questions to the entire panel and to some of the individual panel members. During this part of voir dire, the defense counsel asked one of the potential jurors if any of his family or friends had been a victim of crime. The juror replied "no". Then, addressing the twelve initial jurors as a group, the defense counsel asked if any of them had a different answer to any of the questions he had posed to the other members of the jury panel. No one responded. As voir dire moved to the peremptory challenge stage, the defense counsel asked two more jurors if they had any relationships or connections with any victims of crimes. However, this question was not asked of all potential jurors. Generally, as a new juror's name was called, they were asked if they had a different answer to any of the other questions previously asked. When juror Higley's name was drawn, the following colloquy took place:

THE CLERK: Sally Higley.

THE COURT: Is it Mrs. Higley?

MRS. HIGLEY: Yes.

THE COURT: See if you can wind your way through there and have a seat, please.

You may inquire, Mr. Moss.

MR. MOSS: Thank you, Your Honor. Mrs. Higley, were you able to hear the questions that have been asked up to now, from where you were sitting in the courtroom?

MRS. HIGLEY: Yes.

MR. MOSS: Have you ever been on a jury before?

MRS. HIGLEY: No.

MR. MOSS: Ever been involved in a courtroom proceedings in any capacity?

MRS. HIGLEY: My husband was involved in one.

MR. MOSS: But you weren't?

MRS. HIGLEY: I wasn't personally, no.

MR. MOSS: Okay. Was he a party, was he a witness, or do you know?

MRS. HIGLEY: He was a party.

MR. MOSS: How long ago was that?

MRS. HIGLEY: About a year ago.

MR. MOSS: Was it a civil action?

MRS. HIGLEY: Yes.

MR. MOSS: Anything about that experience in your family that you feel might have any effect on this case?

MRS. HIGLEY; [sic] No.

MR. MOSS: If after you've heard the evidence in this case you feel the State has sustained its burden of proving beyond a reasonable doubt the defendant's guilt, do you have any problem in returning a guilty verdict?

MRS. HIGLEY: No.

MR. MOSS: Thank you.

We will pass Mrs. Higley for cause, Your Honor.

THE COURT: Very well. Mr. Traylor, you may inquire.

MR. TRAYLOR: Pass for cause.

If, as Foster asserts on appeal, an affirmative duty arose to reveal the burglary of her parents' home, it was during this questioning.

During the second day of trial, defense counsel was informed of the burglary of Higley's parents' home. The defense immediately moved for a mistrial based on an allegedly untruthful answer by juror Higley. However, when questioned about the matter, the defense counsel could not present any significant proof of an untruthful answer. The transcript reveals that Foster's counsel informed the court that he had just learned of the matter and needed more time to investigate. The matter was apparently not readdressed until post-trial motions were heard.

During post-trial motions, the court reviewed the defendant's affidavit supporting the allegation of juror misconduct, and heard testimony of several witnesses, including that of juror Higley. The district judge determined that Higley gave no false information during voir dire, that she had no prior acquaintance with the defendant, and that she harbored no prejudice against him that would have rendered the trial unfair. We acknowledge that there are circumstances, particularly where jurors have conducted themselves improperly or have been subjected to strong external influences, where bias may be deemed to exist without an actual showing. *See generally Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (O'Connor, J., concurring). But this is not such a case. The record discloses no misconduct or improper influence. It simply tells us that the juror's parents, with whom the juror did not reside, may have been victims of a burglary committed by the defendant's son. There is no evidence that the juror knew of any such connection.

*State v. Marren*, 17 Idaho 766, 107 P. 993 (1910) provides a warning against setting aside jury verdicts in criminal cases based on ex parte affidavits that challenge the veracity of a juror. *Marren* indicates that the showing must be clear and conclusive that the defendant's trial was not impartial. *Marren*, 17 Idaho at 794–95, 107 P. at 1003. The defendant has not met that burden.

The judgment of conviction is affirmed.

BURNETT and SWANSTROM, JJ., concur.