### No. 80SA243

## The People of the State of Colorado v. James Heintze

(614 P.2d 367)

Decided July 14, 1980.

Jack Healy, District Attorney, Chester H. Budz, Jr., Deputy, for plaintiff-appellant.

Eugene D. Lorig, for defendant-appellee.

*En Banc.*

JUSTICE QUINN delivered the opinion of the Court.

The People in this interlocutory appeal challenge a ruling of the district court suppressing a three and one-half hour tape recorded statement taken from the defendant at the Eagle County jail on December 14, 1979. The trial court concluded that the statement was obtained in violation of Crim. P. 5(a)(1) because the defendant had not been taken before a judge and advised of his rights without unnecessary delay after his arrest on December 11, 1979. We reverse and remand with directions.

On December 8, 1979, an architect was beaten to death with a claw hammer in his apartment in Vail, Colorado. An initial investigation by the Vail Police Department indicated that the victim's roommate, James Heintze, the defendant, was the primary suspect. The defendant could not be located and law enforcement officers throughout the state were notified that he was a suspect in the murder.

On December 11, 1979, at approximately 6:40 p.m. the defendant walked into the Denver Police building and stated to a Denver detective, William Martin, that he "wanted to talk to somebody about a murder." Detective Martin asked the defendant where the murder had occurred and the defendant stated that it had occurred in Vail over the weekend and identified the victim. When asked the cause of death the defendant stated that he beat the victim to death with his fist and a hammer. The detective immediately telephoned the Vail Police Department and confirmed the homicide. He then placed the defendant under arrest and at 6:50 p.m. advised him of his *Miranda* rights. The defendant acknowledged that he understood his rights and then described in some detail the homicide.

The defendant stated that he had been staying with the victim at an apartment in Vail. On the evening of the homicide the victim made improper sexual advances towards the defendant and he initially struck the victim with his fist and thereafter several times with a claw hammer. The defendant then picked up some articles belonging to him and to the victim and fled to Denver. He stated that he had entered the police building and confessed because he "wanted to get it off his chest."

The defendant, pursuant to the detective's request, wrote out a statement about the homicide in his own words. After completing the written statement the defendant executed a written consent to search his room. At this time a Vail police investigator, Ted Shih, was already at the Denver Police Building interviewing a friend of the victim in connection with the homicide. Investigator Shih re-advised the defendant of his *Miranda* rights and the defendant proceeded to discuss further details of the homicide with Shih.

The police then searched the defendant's hotel room and recovered various personal belongings of the defendant and the victim. The defendant was formally booked into the Denver jail during the evening hours of December 11, 1979.

On December 12, 1979, Denver police officers transported the defendant to Vail, Colorado, arriving there at approximately 10:00 a.m. At 12:00 noon a Vail police officer, after advising the defendant of his *Miranda* rights, discussed the homicide again with him. This interrogation was completed at about 1:00 p.m. and the defendant was then transported to the Eagle County jail in Eagle, Colorado, where he was booked in at 1:40 p.m.

Later that afternoon, at about 3:00 p.m., Vail police investigator Shih went to the Eagle County jail for the purpose of clarifying certain facts surrounding the homicide. Shih advised the defendant orally of his *Miranda* rights, and the defendant again responded to questions about the homicide.

At no time on December 12, 1979, was the defendant brought before a judge and advised of his rights pursuant to Crim. P. 5(a)(1). Nor did law enforcement officers make any effort on December 13 to present the defendant for a judicial advisement, in spite of the fact that a judge was sitting in Eagle County. At about 5:00 p.m. on December 13 Vail police officers again visited the Eagle County jail and brought with them a tape recorder for the purpose of taping an additional interrogation of the defendant. The defendant was advised once again of his *Miranda* rights and agreed to talk to the officers. At this point a tape-recorded interrogation of 3 1/2 hours took place. The interrogation was later transcribed and the transcription consisted of 83 pages. The interrogation began at about 5:00 p.m. and concluded at about 8:30 p.m.

On the following day, December 14, 1979, at approximately 9:00 a.m., the defendant was taken before a county judge for advisement pursuant to Crim. P. 5(a)(1). The administrator of the Eagle County jail testified that he was aware of the requirements of taking an accused before a judge without unnecessary delay but could give no explanation whatever why the defendant spent approximately 2 days in the jail without being judicially advised of his rights.[1]

In ruling on the defendant's motion to suppress, the district judge concluded that the defendant was fully advised of his *Miranda* rights, that he freely and knowingly waived those rights at each interrogation, and that the consent to search executed by the defendant was voluntarily and knowingly made. The court suppressed the 3 1/2 hour tape recorded statement taken on the evening of December 13, 1979, on the ground that the

---

[1] The jail administrator testified that he understood Colorado law required him to bring an arrested person before a judge as soon as possible. He testified that he had been hypnotized twice in an effort to recall why the defendant had not been advised but these hypnotic efforts were unsuccessful.

The district judge in ruling on the motion to suppress judicially notices that "this court was in session on that day [December 13, 1979] in this county."

statement was obtained during a period of unnecessary delay in violation of Crim. P. 5(a)(1). However, the court made no determination with respect to the relationship between the unnecessary delay and the tape recorded statement. Accordingly, we reverse and remand the case to the district court for this additional determination.

## I. UNNECESSARY DELAY

Crim. P. 5(a)(1) provides in pertinent part: "If a peace officer . . . makes an arrest, either with or without a warrant, the arrested person shall be taken without unnecessary delay before the nearest available county or district judge." Crim. P. 5(a)(2) imposes on the judge at the accused's first appearance the duty to inform him of, and to make certain that he understands, those basic rights applicable upon the initiation of formal criminal proceedings, especially his privilege against self-incrimination and his right to the appointment of an attorney at state expense if he is financially unable to retain one. The purpose of rule 5 is to furnish a prophylaxis against abuses in the detention process and, more importantly, to place the accused in early contact with a judicial officer so that the right to counsel may not only be clearly explained but also be implemented upon the accused's request. *See e.g., United States v. Robinson,* 439 F.2d 553 (D.C. Cir. 1971); *United States v. Chadwick,* 415 F.2d 167 (10th Cir. 1969); *Adams v. United States,* 399 F.2d 574 (D.C. Cir. 1968), *cert. denied sub nom. Roots v. United States,* 393 U.S. 1067, 89 S.Ct. 722, 21 L.Ed.2d 710 (1968); *see also,* 1 L. Orfield, *Criminal Procedure Under the Federal Rules* § 5.43 (1966).

We have consistently declined to adopt a *per se* rule of exclusion in rule 5 violations; instead, we have required the defendant to show that the delay was unnecessary and that some prejudice resulted from the delay. *People v. Hosier,* 186 Colo. 116, 525 P.2d 1161 (1974); *People v. Casey,* 185 Colo. 58, 521 P.2d 1250 (1974); *People v. Gilmer,* 182 Colo. 96, 511 P.2d 494 (1973); *People v. Reed,* 180 Colo. 16, 502 P.2d 952 (1972); *People v. Weaver,* 179 Colo. 331, 500 P.2d 980 (1972); *Aragon v. People,* 166 Colo. 172, 442 P.2d 397 (1968).

Here, there is no question about the delay being unnecessary. From the time of the defendant's arrest at 6:40 p.m. on December 11, 1979, to his rule 5 advisement at 9:00 a.m. on December 14, 1979, sixty-two hours elapsed without any effort by law enforcement officers to take the defendant before a county or district judge. A "necessary delay" is one reasonably related to the administrative process attendant upon the arrest of the accused, *viz.* delays associated with fingerprinting, photographing, taking inventory of personal belongings, preparation of necessary charging documents and reports, and other legitimate administrative procedures. *E.g., Adams v. United States, supra* at 579 (Burger, J., concurring); *Commonwealth v. Abu-Ibn Hanifah Bey,* 462 Pa. 533, 341 A.2d 907 (1975); *see also State v. Thurston,* 393 A.2d 1345 (Me. 1978); 1 C.

Wright, *Federal Practice and Procedure* § 74 (1969). Where, as here, prolonged inadvertence is the only basis for the delay, that delay is unnecessary.

## II.  PREJUDICE FROM THE DELAY

■ The more troublesome question in this case relates to the second prong of an alleged rule 5 violation: whether prejudice resulted to the accused from the unnecessary delay. The trial court in its order of suppression did not address this issue and we therefore remand for this necessary determination.

■ In order to dispel possible confusion about the standard applicable to the determination of prejudice, we find it necessary to address certain arguments raised by the People in their brief. Relying on *People v. Weaver, supra,* the People argue that prejudice requires a showing of a "studied attempt" by law enforcement officers to avoid taking the accused before a judge. Although *Weaver* expressly noted the absence of any "studied attempt" to violate rule 5 in that case, we did not thereby mean that prejudice requires a showing of an intentional or willful disregard of rule 5 requirements. To the contrary, an accused may be as much prejudiced from a prolonged indifference to his rights as from an intentional or willful disregard of them.

■ The People also urge that the repeated *Miranda* warnings to the accused dispel any notion of prejudice. Compliance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), however, is not a substitute for the speedy presentment requirements of Crim. P. 5. While a proper *Miranda* warning provides some assurance that the defendant's "right to choose between silence and speech remains unfettered throughout the interrogation process," *Miranda v. Arizona, supra* at 469, 86 S.Ct. at 1625, 16 L.Ed.2d at 721, it has not yielded the guarantee that the defendant's right to counsel will be implemented upon request. *Cf. Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). Were we to accept the People's argument, the *Miranda* advisement would become a ready device for avoiding the safeguards inherent in rule 5 proceedings.

■ In determining the existence of prejudice the proper inquiry is whether the unnecessary delay reasonably contributed to the acquisition of the challenged evidence. *See, e.g., United States v. Robinson, supra; Adams v. United States, supra; Morales v. United States,* 344 F.2d 846 (9th Cir. 1965); *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973); *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972); *see also Aragon v. People, supra.* In view of the important role played by Crim. P. 5 in speedily implementing the right to counsel especially for an indigent defendant, some important considerations on the issue of prejudice are: whether an attorney had already been retained by, or had been made available to, the defendant during the period of

unnecessary delay; whether that attorney was accessible to the defendant prior to the challenged statement; and whether the defendant freely and knowingly waived the presence of the.attorney in making the challenged statement to the police.

Upon remand, if the trial court determines that the unnecessary delay reasonably contributed to the acquisition of the challenged statement, then the motion to suppress should be granted. If, on the other hand, the trial court is not satisfied that the unnecessary delay reasonably contributed to the acquisition of the statement, then the motion to suppress should be denied.

Accordingly, the ruling is reversed and the cause remanded to the trial court with directions to proceed in accordance with the views herein set forth.