The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

Jacob Dean **LA PLANT,** Defendant-Appellant.

No. 80CA1169.

Colorado Court of Appeals, Div. III.

Feb. 3, 1983.

As Modified on Denial of Rehearing April 14, 1983.

Certiorari Denied Sept. 26, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sp. Asst. Atty. Gen., Laura E. Udis, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender Charles F. Kaiser, David Eisner, Deputy State Public Defenders, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant appeals his conviction of second degree murder, motor vehicle theft, and conspiracy to commit second degree murder. We affirm.

According to the defendant's confession, he met Ronald Hardison while on a temporary job, and Hardison invited the defendant and his common-law wife, Tina, to move in with him. Defendant claimed that Hardison made repeated sexual suggestions to Tina. Because of these suggestions, the defendant and Tina decided to kill Hardison. Defendant claims he was hesitant, but that Tina "psyched him into it." They both entered Hardison's bedroom in the early morning hours, and the defendant killed Hardison by knifing him repeatedly.

Tina and the defendant loaded their belongings into Hardison's car and drove to

Buffalo, Wyoming, where Tina's mother lives. Sometime during the trip, they stole Wyoming license plates to replace Hardison's.

Four days later, the police discovered Hardison's body. Upon investigation, they learned that Tina and the defendant had been staying with Hardison. Through one of Tina's employers, the police learned of her mother's address, and notified authorities in Wyoming to be on the lookout for Hardison's car.

Tina and the defendant were arrested in Buffalo, Wyoming, on charges of motor vehicle theft and, after being given *Miranda* warnings, were held for questioning. Twenty-six hours after the arrest, Colorado law enforcement officers arrived in Buffalo. These officers repeated the *Miranda* warnings to the defendant, after which the defendant confessed to the killing. Defendant was brought before a Wyoming magistrate the next day.

## I.

Defendant's first argument on appeal is that the trial court erred in failing to suppress his confession obtained during the delay in bringing him before a magistrate. We conclude that the trial court properly admitted the confession into evidence.

Both Colorado and Wyoming Rules of Criminal Procedure contain similar language which requires that arrestees be taken before a magistrate without delay. Crim.P. 5(a)(1) states:

> "If a peace officer or any other person makes an arrest, either with or without a warrant, the arrested person shall be taken without unnecessary delay before the nearest available county or district judge."

■ The purpose of this rule is to insure that a defendant is adequately informed of his rights. *People v. Casey,* 185 Colo. 58, 521 P.2d 1250 (1974). Citing *People v. Heintze,* 200 Colo. 248, 614 P.2d 367 (Colo. 1980), defendant argues that when a confession is obtained as a result of an unnecessary delay in bringing a suspect before a

magistrate, it must be suppressed. We do not disagree with that general proposition, but conclude that it did not require suppression of the confession in this case.

■ Violation of Crim.P. 5(a)(1) does not *per se* require suppression. The defendant must show prejudice as a result of the delay. *People v. Heintze, supra; People v. Litsey,* 192 Colo. 19, 555 P.2d 974 (1976).

■ To determine whether there was prejudice, a court must inquire whether the unnecessary delay reasonably contributed to the acquisition of the challenged evidence. *People v. Heintze, supra.* The trial court in this case conducted a full inquiry into any potential prejudice, applying the *Heintze* standard. After a reading of the record and the trial court's findings, we agree that the defendant did not establish any prejudice resulting from the 26-hour delay.

Moreover, a Wyoming magistrate cannot be expected to advise a Colorado defendant on the nature of the Colorado charges against him. *People v. Robinson,* 192 Colo. 48, 556 P.2d 466 (1976). It was reasonable to wait at least until Colorado law enforcement officers arrived before bringing defendant before the magistrate. Since the Colorado officers advised defendant of his *Miranda* rights, and his confession was otherwise completely voluntary, even if a failure to comply strictly with Crim.P. 5(a)(1) is assumed, any error was harmless.

## II.

■ Defendant next argues that the trial court erred in denying a defense motion for a joint psychiatric examination with Tina because the defendant's insanity theory was *folie a deux* (shared paranoid disorder). We find no merit in this argument.

The central problem with defendant's argument is that Tina, on advice of her counsel, refused to submit to the joint examination. There is no authority in the Rules of Criminal Procedure nor in our statutes for ordering an unconsenting third party to submit to a psychiatric examination. Nor are we aware of any case authority for requiring such joint examination. Thus,

the trial court properly denied defendant's motion for a joint psychiatric examination.

### III.

 Defendant next argues that it is legally impossible to conspire to commit second degree murder. However, this argument was not raised below in discussions regarding instructions or the verdict forms. Thus, we decline to consider it here. *People v. Horne,* 619 P.2d 53 (Colo.1980).

### IV.

As his final argument, defendant attacks the propriety of the sentence imposed, arguing that although the jury found defendant guilty of second degree rather than first degree murder, the trial court nevertheless considered premeditation when sentencing him. Defendant has not established that this was error.

The trial court sentenced defendant to twenty to fifty years for second degree murder. After a motion to modify, pursuant to Crim.P. 35(b), the court reduced defendant's sentence to fifteen to thirty years. At the time of the offense, the possible sentence was ten to fifty years. Section 18–1–105, C.R.S.1973. Thus, the sentence was well within the permitted range.

Sentencing "is a matter within the sound discretion of the trial court," and "absent a clear abuse of that discretion, the sentencing decision will not be reversed on appeal." *People v. Lowery,* 642 P.2d 515 (Colo.1982). We perceive no abuse of discretion here. As explained by one commentator:

> "[It is] permissible for the sentencing judge to consider an offender's criminal activity, the charges for which are merely pending, or to consider 'unlawful activities' for which there has been no conviction, or charges that have been dismissed, or *even evidence of other 'crimes' for which the offender was tried and acquitted.*" (emphasis supplied)

A. Campbell, *Law of Sentencing* (1978).

The Federal courts have consistently held that the trial court may consider evidence such as was considered here:

> "It cannot be seriously doubted that a sentencing judge is entitled to select, within statutory limits, a more severe sentence than would otherwise be imposed on the basis of facts relating to other charges that have been brought, even though they have not resulted in conviction ... Indeed he can do so on the basis of facts relating to other charges on which the defendant has been acquitted."

*Drayton v. People,* 556 F.2d 644 (2nd Cir. 1977). *See also United States v. Morgan,* 595 F.2d 1134 (9th Cir.1979); *United States v. Bowdach,* 561 F.2d 1160 (5th Cir.1977); *United States v. Grayson,* 550 F.2d 103 (3rd Cir.1976); *United States v. Haygood,* 502 F.2d 166 (7th Cir.1974); *United States v. Atkins,* 480 F.2d 1223 (9th Cir.1973); *United ed States v. Sweig,* 454 F.2d 181 (2nd Cir. 1972).

Judgment affirmed.

KIRSHBAUM and TURSI, JJ., concur.