The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Joseph Crazyhorse ROYBAL,
Defendant–Appellant.

No. 00CA0667.

Colorado Court of Appeals,
Div. I.

Nov. 23, 2001.

Rehearing Denied March 7, 2002.

Certiorari Denied Sept. 23, 2002.

Ken Salazar, Attorney General, Evan W. Jones, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Linda Perkins Cooke, Boulder, CO, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Joseph Crazyhorse Roybal, appeals the judgment of conviction entered on a jury verdict finding him guilty of two counts of first degree murder (after deliberation and felony murder, the sentences for which were merged) and first degree burglary. We affirm.

At 6:00 p.m. February 2, 1999, Denver police officers arrested defendant in connection with a homicide and burglary committed on January 25, 1999. The arresting officer advised defendant of his *Miranda* rights and asked him if he wished to speak with a detective. Defendant answered "yes."

After being transported to Denver police headquarters and before any formal booking process, defendant was contacted in his holding cell by a second Denver police officer at about 7:55 p.m. Defendant again indicated that he wanted to talk with police. Thereafter, the police officer led defendant to an interview room and read him his *Miranda* rights. Defendant gave a brief videotaped account of the burglary and the circumstances surrounding the homicide. The interview ended at 8:55 p.m. Defendant was then taken to the Denver city jail where he was booked.

The next morning, on February 3, 1999, the lead detective investigating the homicide retrieved defendant from the jail and took him back to police headquarters. After being advised again of his *Miranda* rights, defendant gave another videotaped statement. The interview began at 7:57 a.m. and concluded at 8:49 a.m.

While returning to the jail, defendant asked the detective if he could add something to his statement. The detective confirmed that defendant understood his constitutional rights and subsequently took a third statement from defendant. This interview lasted approximately eight minutes and ended at 9:07 a.m.

After the third interview, the detective asked defendant if he would be willing to take a polygraph examination. Defendant agreed.

A second detective conducted the polygraph examination. This detective also advised defendant of his *Miranda* rights and obtained permission to conduct the examination. The polygraph examination began at approximately 10:50 a.m. on February 3, 1999.

In each of the first three interviews, defendant admitted that he was present, with his codefendant, during the burglary and homicide. Defendant admitted to striking the victim in the head with a bottle, but attributed the death of the victim to his codefendant. However, during the polygraph exami-

nation, defendant acknowledged that he had stabbed the victim once in the chest.

After learning of the new statements that defendant had given during the polygraph examination, the first detective conducted a fifth interview of defendant, during which defendant again admitted that he stabbed the victim once in the chest. The detective returned defendant to the city jail at 1:10 p.m. on February 3.

Defendant was scheduled to appear in court for his first advisement pursuant to Crim. P. 5(a) at 10:30 a.m. on February 3. The record reveals that advisements are conducted daily at 10:30 a.m. for all inmates who are in jail by 2:00 a.m. the previous night. When defendant was not present for his scheduled advisement on February 3, the court bailiff continued his first advisement until the next day. Defendant first appeared in court for his Crim. P. 5(a) advisement at 10:30 a.m. on February 4, 1999, over forty-one hours after his arrest.

### I. Voluntariness of Statements

■ Defendant contends that the totality of the circumstances rendered all his statements during the five interrogations involuntary. We disagree.

■ We must defer to the trial court's findings of fact, and we will not substitute our judgment for that of the trial court unless its findings are clearly erroneous. However, a trial court's legal conclusions are subject to de novo review. *People v. Romero,* 953 P.2d 550, 555 (Colo.1998).

■ A confession made by a suspect is admissible at trial only if it was voluntarily made. *People v. Raffaelli,* 647 P.2d 230 (Colo.1982). In determining whether a defendant's statements are voluntary, a trial court must consider the totality of the circumstances surrounding the statements. *People v. Valdez,* 969 P.2d 208 (Colo.1998).

■ The supreme court has articulated several factors to consider when evaluating the voluntariness of a statement in light of the totality of the circumstances, including: whether the defendant was in custody or was free to leave and was aware of his or her situation; whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived his or her *Miranda* rights; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as the defendant's educational background, employment status, and prior experience with law enforcement and the criminal justice system. *People v. Gennings,* 808 P.2d 839 (Colo.1991); *People v. Lopez,* 946 P.2d 478 (Colo.App.1997). Using the *Gennings* factors and any other relevant evidence, a trial court must determine whether the defendant's will was overborne by improper state conduct. If coercive conduct is found, a trial court must further conclude that such conduct played a significant role in inducing the statements. *People v. Valdez, supra.*

Here, after a lengthy hearing and after viewing videotaped interviews with defendant, the trial court made clear, specific findings related to the *Gennings* factors. It found that defendant was orally advised of his *Miranda* rights, agreed to talk with detectives, was not suffering from any significant emotional or physical conditions, was not under the influence of drugs or alcohol, was not suffering from any sleep deprivation, and was eighteen years old and had his general equivalency diploma.

Although the trial court did not address individually each of the *Gennings* factors, it heard testimony related to each factor, and a review of the record supports the trial court's finding that defendant's statements were voluntary.

In addition, the trial court determined, with record support, that defendant's statements regarding his role in the offense did not result from coercive police tactics such as promises or express or implied threats. Defendant testified that he had received his *Miranda* warnings more then six times and

that he understood and waived these rights. In fact, defendant expressed a complete willingness to cooperate with police on several occasions. After hearing conflicting testimony regarding why defendant cooperated with police and the manner in which the police conducted the polygraph examination, the trial court concluded that defendant's testimony was not credible and elected to give more credence to the police officers' testimony.

Because the trial court's findings of fact are supported by competent evidence in the record, *see People v. Valdez, supra;* the trial court's ruling will not be disturbed.

## II. Crim. P. 5(a)

Defendant next contends that the trial court erred when it found no unnecessary delay in presenting defendant for a Crim. P. 5 advisement. Again, we disagree.

Crim. P. 5(a)(1) requires a peace officer making an arrest to take the arrested person "without unnecessary delay before the nearest available county or district court."

Crim. P. 5(a)(2) imposes on the judge at the accused's first appearance the duty to inform the suspect of, and to make certain that the suspect understands, those basic rights applicable upon the initiation of formal criminal proceedings, especially the privilege against self-incrimination and the right to the appointment of an attorney at state expense if the suspect is financially unable to retain one.

■ The purpose of Crim. P. 5 is to prevent abuses in the detention process and, more importantly, to place the accused in early contact with a judicial officer, so that the right to counsel may not only be clearly explained but also be implemented upon the accused's request. *People v. Heintze,* 200 Colo. 248, 614 P.2d 367 (1980).

The supreme court has declined to adopt a per se rule of exclusion of evidence for Crim. P. Rule 5 violations and instead has articulated a two-pronged test requiring defendants to show (1) that the delay was unnecessary and (2) that some prejudice resulted therefrom. *See People v. Heintze, supra.*

■ A necessary delay is one reasonably related to the administrative process attendant upon the arrest of an accused. Such delays are usually associated with fingerprinting, photographing, taking inventory of personal belongings, preparing necessary charging documents and reports, and other legitimate administrative procedures. *People v. Heintze, supra.*

■ However, where the delay is occasioned by the decision of law enforcement officers to conduct a custodial interrogation of the defendant before presenting him or her to a judicial officer for a proper advisement of rights, such a delay is not a necessary delay within the meaning Crim. P. 5(a). *People v. Raymer,* 662 P.2d 1066 (Colo.1983).

Here, the trial court found that there was no unnecessary delay between defendant's arrest and his initial appearance before a judicial officer. As a result, the trial court made no findings as to prejudice.

■ Defendant argues that the trial court applied an incorrect legal standard and that the record supports a finding of unnecessary delay. However, even if we were to conclude that the delay was unnecessary, defendant has not shown that he was prejudiced by this delay. *See People v. Aguirre,* 839 P.2d 483 (Colo.App.1992)(appellate court can affirm judgment based on reasoning different from that of trial court).

The supreme court has instructed courts to consider several factors in determining prejudice, including:

whether an attorney had already been retained by, or had been made available to, the defendant during the period of unnecessary delay; whether that attorney was accessible to the defendant prior to the challenged statement; and whether the defendant freely and knowingly waived the presence of the attorney in making the challenged statement to the police.

*People v. Heintze, supra,* 200 Colo. at 253–54, 614 P.2d at 372.

■ Even repeated *Miranda* warnings are not a substitute for the speedy presentment requirements of Crim. P. 5. *People v. Heintze, supra,* 200 Colo. at 253, 614 P.2d at

371 (citing *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), for the proposition that proper *Miranda* warnings do not always assure that the right to remain silent and the right to counsel will remain unfettered throughout the interrogation process).

 Prejudice does not require a showing of intentional or willful disregard of Crim. P. 5 requirements by police officers. Rather, a defendant may be prejudiced by prolonged indifference or inadvertence to his or her rights. *People v. Heintze, supra,* 200 Colo. at 253, 614 P.2d at 371.

 Instead, the appropriate inquiry in determining the existence of prejudice is whether the unnecessary delay reasonably contributed to the acquisition of the challenged evidence. *People v. Heintze, supra.*

Subsequent cases provide further guidance in analyzing the prejudice prong. *See—generally People v. Garcia,* 746 P.2d 560 (Colo. 1987)(the type of prejudice that will justify relief for a violation of Crim. P. 5 must be related to the harm the rule was promulgated to prevent, and the defendant must show unfair prejudice or the denial of some basic constitutional right by reason of the failure to comply with the rule); *People v. Raymer, supra* (relevant period for purposes of Crim. P. 5(a) is the time between the arrest and the acquisition of the challenged evidence); *People v. Johnson,* 653 P.2d 737 (Colo.1982)(prejudice can be inferred if the unreasonable delay reasonably contributed to the challenged evidence); *People v. La Plant,* 670 P.2d 802 (Colo.App.1983)(noting that because defendant was advised of his *Miranda* rights, and his confession was otherwise completely voluntary, any failure to comply strictly with Crim. P. 5(a) was harmless).

Here, defendant argues that had he been in court for his initial appearance on the morning of February 3, 1999, he would not have been at the police station making incriminating statements. However, to demonstrate prejudice, defendant must establish more than this attenuated causal connection.

Courts of other jurisdictions considering state constitutional, statutory, and criminal procedure provisions similar to Crim. P. 5(a) have required that, to establish prejudice, a defendant show a nexus between the delay and the challenged evidence. *See Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973). In other words, a defendant must establish that the delay induced, caused, or was used to extract a confession. *See—generally People v. Thompson,* 27 Cal.3d 303, 165 Cal.Rptr. 289, 611 P.2d 883 (1980) (defendant must show the illegal detention produced the admissions or that there was an essential connection between the illegal detention and the confession); *Pawloski v. State,* 269 Ind. 350, 380 N.E.2d 1230 (1978)(when a confession is the product of the detention, it must be suppressed, but when it is so independent of that detention as to be the product of free will, it will not be suppressed); *People v. Wynn,* 102 Misc.2d 785, 424 N.Y.S.2d 664 (N.Y.Sup.Ct.1980)(confession suppressed because without the delay, the defendant's waiver of counsel and confession would not have occurred).

Here, the record reflects that the delay did not cause defendant to confess. Rather, defendant willingly made statements to the police during the delay, not as a result of it. Furthermore, the record does not reveal that the prejudice defendant complains of is related to the type of harm that Crim. P. 5 was designed to prevent.

As discussed in Part I, there were no abuses in the detention process. Defendant was given multiple *Miranda* warnings, understood and waived his rights, and repeatedly expressed a desire to talk with police. Defendant's interrogation was unaccompanied by any coercive police conduct. More importantly, the record does not reveal, and defendant does not argue, that early contact with a judicial officer would have changed defendant's willingness to waive his rights to counsel and to remain silent.

Finally, this case does not present the situation in *Oregon v. Hass, supra,* that the supreme court in *Heintze* was trying to prevent. The defendant in *Oregon v. Hass* received *Miranda* warnings and invoked his right to counsel. However, before police officers made an attorney available to him, the

defendant confessed. Here, defendant never asserted his right to an attorney.

Accordingly, defendant has not demonstrated that the delay in bringing him before a judge for a Crim. P. 5 advisement induced or caused him to make the incriminating statements. Thus, we conclude that defendant was not prejudiced by any delay.

### III. Motion to Continue

■ Defendant also contends that the trial court abused its discretion in denying his request for a continuance so that his attorney could secure the presence of a witness having material evidence related to defendant's duress defense. We are not persuaded.

■ The grant or denial of a motion for continuance lies within the sound discretion of the trial court, and a conviction will not be overturned on appeal unless an analysis of the totality of the circumstances shows that the trial court's denial of the continuance was an abuse of discretion. *People v. Bakari*, 780 P.2d 1089 (Colo.1989); *People v. Davis*, 849 P.2d 857 (Colo.App.1992), *aff'd*, 871 P.2d 769 (Colo.1994).

■ An abuse of discretion occurs only when, under the circumstances, a ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Crow*, 789 P.2d 1104 (Colo.1990).

No mechanical test exists for determining whether the denial of a request for a continuance constitutes an abuse of discretion. Rather, the answer must be found within the circumstances of each case, particularly in the reasons presented to the trial judge at the time of the request. *People v. Hampton*, 758 P.2d 1344 (Colo.1988).

■ Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. CRE 401. Facts collateral to or bearing so remotely upon an issue that they afford only conjectural inference should not be admitted into evidence. *People v. Botham*, 629 P.2d 589 (Colo.1981).

■ Whether evidence is relevant is within the sound discretion of the trial court,

and its determination will not be disturbed unless there was an abuse of discretion. *People v. Melillo*, 25 P.3d 769 (Colo.2001). The trial court's discretion to determine relevancy is broad. *People v. Gutierrez*, 1 P.3d 241 (Colo.App.1999).

Here, on January 21, 2000, defendant made an oral motion to continue the trial. As grounds, defendant's counsel stated, among other things, that he needed more time to investigate statements made by a potential witness who was apparently present when defendant's codefendant planned the burglary. Noting that the trial date had been continued once and that defendant's counsel and the People were meeting that afternoon to address discovery issues, the trial court denied the motion, but stated that defendant could file a written motion if a need for a continuance still existed after the meeting.

Defendant filed a written motion for continuance and orally renewed the motion on the morning of trial, stating: (1) he needed more time to secure the presence of the witness; (2) the witness would testify that defendant was not present when defendant's codefendant and wife were planning the burglary; (3) this testimony supported defendant's duress defense and his claim that he did not intend to kill the victim; and (4) he learned about this evidence on February 1, 2000, when the People transmitted the witness's statements to him. The witness gave his statements to a detective on January 24, 2000. The trial court denied defendant's motion, stating that it was not convinced the testimony was material.

We are not persuaded by defendant's argument that the witness's anticipated testimony was relevant to his duress defense. The fact that defendant was not present during a conversation where defendant's codefendant and wife indicated that they were going to commit a burglary is simply too remote to establish that defendant acted under duress. Accordingly, we conclude that the trial court did not abuse its discretion when it determined that the witness's testimony would not be material.

The judgment is affirmed.

NEY and PIERCE,* JJ., concur.