**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

**v.**

**Thomas P. ROGERS, Defendant–
Appellant.**

**No. 01CA0105.**

Colorado Court of Appeals,
Div. II.

Sept. 12, 2002.

Rehearing Denied Nov. 14, 2002.

Certiorari Denied May 12, 2003.

Ken Salazar, Attorney General, Cheryl Hone, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

James Grimaldi, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Thomas P. Rogers, appeals the judgment of conviction entered upon jury verdicts finding him guilty of first degree (after deliberation) murder, conspiracy to commit first degree murder, and solicitation of another to commit first degree murder. We affirm.

Defendant's ex-wife was shot to death in the apartment defendant shared with his girlfriend. The girlfriend called 911, claiming to have shot the victim in self-defense. Police responding to the scene found only the girlfriend and the victim. The police determined, however, that the physical evidence at the scene was inconsistent with a claim of self-defense.

Investigating officers were aware that defendant had had an acrimonious relationship with the victim because of their divorce and disputes regarding custody of their children. About three hours after the shooting, defendant returned to the apartment. He was arrested after he showed no concern about who had been shot, and the police seized his clothes. He was released that same day.

Eighteen months later, defendant was charged with counts of first degree murder, conspiracy to commit first degree murder, and solicitation of another to commit first degree murder. He was convicted of those charges after a jury trial and sentenced to concurrent prison terms of life, twenty-five years, and twenty-five years.

*I. Suppression of Evidence*

■ Initially, defendant contends that the trial court erred in denying his motion to suppress evidence of gunshot residue on his clothing. According to defendant, his clothing was seized illegally because his arrest was not supported by probable cause. We disagree.

■ "Probable cause to arrest exists when, under the totality of the circumstances at the time of arrest, the objective facts and circumstances available to a reasonably cautious officer at the time of arrest justify the belief that (1) an offense has been or is being committed (2) by the person arrested." *People v. King*, 16 P.3d 807, 813 (Colo.2001).

■ The probable cause standard represents a necessary accommodation between the individual's right to liberty and the state's duty to enforce the law for the protection of society. *People v. Rayford*, 725 P.2d 1142, 1146 (Colo.1986). Accordingly, the quantum and quality of information necessary to support a finding of probable cause is significantly less than that required to prove an accused's guilt at trial. *People v. Washington*, 865 P.2d 145, 147 (Colo.1994).

■ Probable cause is measured in terms of "probabilities similar to the factual and practical questions of everyday life upon which reasonable and prudent persons act." *People v. MacCallum*, 925 P.2d 758, 762 (Colo.1996)(quoting *People v. Thompson*, 793 P.2d 1173, 1175 (Colo.1990)). It takes into account a police officer's experience and training in determining the significance of his or her observations, *People v. King, supra*, 16 P.3d at 813, and, because it turns on "common-sense conclusions about human behavior," *People v. Polander*, 41 P.3d 698, 702 (Colo.2001), it may be satisfied even where innocent explanations exist for conduct. *See* 2 W.R. LaFave, *Search and Seizure* § 3.2(e), at 70 (3d ed.1996)(probable cause exists if a "succession of superficially innocent events had proceeded to the point where a prudent man could say to himself that an innocent course of conduct was substantially less likely than a criminal one").

■ On appeal, while we defer to the trial court's findings of historical fact, we review de novo the issue whether the police had probable cause when they subjected a citizen to a warrantless arrest. *See Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920 (1996); *People v. Matheny,* 46 P.3d 453, 461 (Colo.2002).

Here, the record reflects that the police knew the following facts when they arrested defendant: (1) the victim was killed in defendant's apartment, purportedly by defendant's girlfriend; (2) the physical evidence indicated that the victim was not shot in self-defense, but rather was shot several times while trying to escape to the far end of the apartment; (3) defendant's girlfriend displayed, in the officer's opinion, an unusually calm demeanor; (4) defendant had an acrimonious relationship with the victim, evidenced, in part, by the domestic violence and harassment calls to which the police had previously responded; (5) defendant had been seen with the girlfriend at the apartment on the afternoon of the shooting; (6) one witness observed, close in time to the shooting, defendant drive out of the apartment complex in a rush; (7) defendant and the victim had previously exchanged custody of their children in the lobby of the police station; (8) on at least two occasions, defendant had waited in the lobby for the victim to arrive, but on the evening of the shooting, defendant entered the police station at about 6:30 p.m. and requested verification that he had been waiting outside in the parking lot since 6 p.m.; (9) the victim had been shot around 6 p.m.; and (10) upon returning to the apartment, and after having been informed of a shooting in his apartment, defendant evidenced no concern for who (including his girlfriend) might have been shot.

Looking at the totality of the circumstances known to the police at the time of the arrest, we, like the trial court, conclude that the police had adequate grounds to reasonably believe that defendant was criminally responsible in some manner—as a conspirator, a complicitor, or even a principal—for the death of the victim. Because defendant's arrest was supported by probable cause, we have no reason to disturb the trial court's ruling.

Finally, inasmuch as they were not raised in the trial court, we decline to consider defendant's assertions that: (1) the trial court's probable cause determination was premised, in part, upon evidence obtained in violation of his constitutionally protected rights to remain silent and to the assistance of an attorney; and (2) because he was released from custody shortly after his arrest, the prosecution was judicially estopped from arguing that his arrest was based on probable cause. *See People v. White,* 64 P.3d 864 (Colo.App.2002)(issues not raised in suppression hearing need not be addressed on appeal); *People v. Bolton,* 859 P.2d 311, 316 (Colo.App.1993)(declining to address judicial estoppel argument not raised in the trial court), *overruled on other grounds by Close v. People,* 48 P.3d 528 (Colo.2002).

## II. Presentment to a Magistrate

■ Defendant contends that either his case should have been dismissed or evidence should have been suppressed, because he was not brought before a magistrate or judge to receive his Crim. P. 5 advisements until eighteen months after his arrest. We are not persuaded.

■ Crim. P. 5(a)(1) & (2) require that a person arrested for a felony be taken without unnecessary delay before the nearest available county or district court to be informed of, among other things, the nature of the charges filed against him or her and certain basic rights, such as the right to bail. The purpose of the rule, however, is "to furnish a prophylaxis against abuses *in the detention process.*" *People v. Heintze,* 200 Colo. 248, 252, 614 P.2d 367, 371 (1980)(emphasis added); *see People v. Vigoa,* 841 P.2d 311, 317 (Colo.1992); *see also People v. Roybal,* 55 P.3d 144 (Colo.App.2001).

Because defendant was released from custody the same day he was arrested, he was no longer "in the detention process" or otherwise subject to the potential abuses the rule addresses. The right to bail, for example, was inapposite because he was no longer in

custody. Similarly, because no charges had been filed before he was released, defendant could not be informed of them, no plea could be entered, and defendant's statutory speedy trial rights were not implicated.

Finally, to the extent that defendant complains about the lack of assistance of counsel during those eighteen months, we note that the state did nothing during that time to interfere with defendant's ability to obtain counsel on his own.

For these reasons, we conclude that neither dismissal of charges nor suppression of evidence is warranted.

### III. Defendant's Reaction to News of the Shooting

■■■ Defendant contends that the trial court erred in permitting an officer to express his opinion regarding defendant's credibility on a specific occasion. According to defendant, the officer improperly testified that defendant reacted to news of the shooting in a way that was "strange" and "different than [what the officer was] used to." We are not persuaded.

At trial, defendant objected to the officer's testimony only on grounds of general relevancy. Because he did not object upon the grounds he raises now, we review the trial court's ruling only for plain error. *See People v. Kruse*, 839 P.2d 1, 3 (Colo.1992).

■■ "Plain error has been defined as an error that is obvious, substantial, and grave, seriously affecting the substantial rights of the accused." *Moore v. People*, 925 P.2d 264, 268–69 (Colo.1996)(footnote omitted). Ordinarily, plain error exists when, after a review of the entire record, an appellate court concludes with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *See Moore v. People, supra*.

Here, we discern no error, much less plain error, because the witness did no more than produce evidence tending to make defendant's guilt more likely, and innocence less likely, than it would have been without the evidence. *See Salcedo v. People*, 999 P.2d 833, 840 (Colo.2000)("Evidence of a defendant's actions, demeanor, or appearance at the time he allegedly committed a crime generally is relevant to the defendant's state of mind."); *see also State v. Cerce*, 22 N.J. 236, 245–46, 125 A.2d 689, 694 (1956)(evidence that, when informed of his wife's murder, defendant reacted without any noticeable emotional disturbance admitted to show defendant had knowledge of crime); *Hackney v. State*, 551 S.W.2d 335, 339 (Tenn.Crim.App.1977)(evidence of "apparent unconcern" for plight of lover indicative of defendant's consciousness of guilt); *Ashley v. State*, 527 S.W.2d 302, 305 (Tex.Crim.App. 1975)(lay opinion about attitude or emotional state of accused admissible).

Consequently, we reject defendant's assertion that CRE 608(a) precludes this evidence. *See People v. Wheatley*, 805 P.2d 1148, 1148–49 (Colo.App.1990)(mere fact that the prosecution's evidence contradicted the defendant's evidence did not constitute an attack on credibility); *People v. Koon*, 724 P.2d 1367, 1370 (Colo.App.1986)(expert testimony not inadmissible simply because it incidentally tends to bolster or attack another's credibility).

### IV. Pre–Arrest Silence

■■ Defendant next contends that the trial court erred in admitting evidence of, and allowing references in opening statements and closing argument to, his pre-arrest invocation of his right to counsel and his right to remain silent. Again, we disagree.

After arriving at the crime scene the night of the shooting, defendant had a brief conversation with an officer; during that conversation, both he and the officer asked questions of one another without receiving answers in return. Defendant then told the officer, "If you are not going to answer my questions, then I'm not going to answer yours without an attorney."

At trial, the prosecution introduced and commented upon evidence of: (1) defendant's conduct, demeanor, and lack of concern during the conversation; and (2) defendant's statement, absent, however, the concluding phrase "without an attorney."

Defendant did not object to the evidence or comments about his statement; and, he did not object on Fifth Amendment grounds to the evidence concerning his conduct, demeanor, and lack of concern on the night of the crime. Ordinarily, then, defendant's new Fifth Amendment contentions would be reviewable only for plain error. *See* Crim. P. 52(b); *People v. Kruse, supra,* 839 P.2d at 3. Here, we find no error, much less plain error.

Initially, we note that, to the extent defendant asserts his right to counsel was abridged by reference even to his abbreviated statement, any invocation of that right was made when he was not in custody and, thus, when he had no such constitutional right. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966)(right to counsel attaches with custodial arrest); *People v. Welsh,* 58 P.3d 1065 (Colo.App.2002).

With respect to defendant's asserted right to remain silent, the United States Supreme Court has not yet decided whether the Fifth Amendment's privilege against self-incrimination precludes use of a defendant's pre-arrest silence as substantive evidence of guilt. While federal and state appellate courts are fairly evenly divided on this issue, *see, e.g.,* M. Strauss, *Silence,* 35 Loy. L.A. Rev. 101, 130–41 (2001), a division of this court recently held inadmissible evidence of a defendant's pre-arrest silence in the prosecution's case-in-chief. *See People v. Welsh, supra; see also People v. Herr,* 868 P.2d 1121, 1124 (Colo.App.1993)(prosecution should not comment upon a defendant's pre-arrest silence as a means of implying guilt).

■ We agree that, in some circumstances, use of a defendant's pre-arrest silence as substantive evidence of guilt is impermissible, because "[a]n accused's right to silence derives, not from *Miranda,* but from the Fifth Amendment itself," *State v. Easter,* 130 Wash.2d 228, 238, 922 P.2d 1285, 1290 (1996), and

[a]ny time an individual is questioned by the police, that individual is compelled to do one of two things—either speak or remain silent. If both a person's prearrest speech and silence may be used against

that person ... that person has no choice that will prevent self-incrimination.

*State v. Fencl,* 109 Wis.2d 224, 237, 325 N.W.2d 703, 711 (1982).

Turning to the circumstances of this case, we reject defendant's assertion that Fifth Amendment error occurred when the prosecution elicited evidence of and commented upon his conduct, demeanor, and lack of concern on the night of the crime. The evidence and comments challenged here referred not to defendant's silence in the face of police questioning, but rather to his failure, while speaking to the police, to show concern even for the welfare of his girlfriend. *See United States v. Goldman,* 563 F.2d 501, 503 (1st Cir.1977)("A defendant cannot have it both ways. If he talks, what he says or omits is to be judged on its merits or demerits ....")(quoting *Vitali v. United States,* 383 F.2d 121, 123 (1st Cir.1967)).

■ We also reject defendant's assertion that his statement, "If you are not going to answer my questions, then I'm not going to answer yours," was an exercise of his Fifth Amendment right to remain silent. In this context, silence "includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted." *Wainwright v. Greenfield,* 474 U.S. 284, 295, 106 S.Ct. 634, 640, 88 L.Ed.2d 623, 632 (1986). However, reasonably interpreted, defendant's statement conveyed not a desire to stop speaking to the officer, but rather a conditional offer to speak further with him. Indeed, although it is not entirely clear from the record, it appears that, following his statement, defendant may well have continued asking questions of the officer. Under the circumstances, then, neither the introduction of the statement, nor the prosecution's remarks with respect thereto, penalized defendant for exercising his constitutional right to remain silent. *Cf. People v. Arroya,* 988 P.2d 1124, 1129–30 (Colo. 1999)(in custodial interrogation setting, to invoke right to remain silent "a suspect must clearly articulate the desire to remain silent so that a reasonable police officer in the circumstances would understand the suspect's words and conduct to mean that the

suspect is asserting her *Miranda* right to cut off questioning"); *People v. Gray*, 975 P.2d 1124, 1130 (Colo.App.1997)(in custodial interrogation setting, "a defendant's invocation of the right to remain silent must be clear and unequivocal").

Consequently, we conclude that no error occurred here.

### V. Victim's Fear of Defendant

Next, defendant contends that the trial court erred in admitting evidence that the victim expressed fear of defendant, asked her brother to move in with her, and took precautionary safety measures such as taking different routes to and from work. Defendant argues the evidence was inadmissible hearsay and irrelevant. We find no basis for reversing on these grounds.

Assuming, arguendo, that all this evidence was hearsay, it was not subject to exclusion under the rule against hearsay. A victim's statements to the effect that she was, at the time, afraid of another fall squarely within the state of mind hearsay exception under CRE 803 because they refer not to past events or conditions, but to the victim's then existing state of mind. *See, e.g., People v. Madson*, 638 P.2d 18, 27 (Colo.1981)("[T]he statement 'I fear X' is direct evidence of the declarant's fear of X."); *People v. Cardenas*, 25 P.3d 1258, 1263 (Colo.App.2000)(evidence that the victim had told his sister that he was "getting afraid" of the defendant).

There is, however, some question whether this type of evidence is irrelevant and hence inadmissible when, as here, the victim's state of mind is not directly at issue. *See People v. Borrelli*, 624 P.2d 900, 903 (Colo.App.1980)(error in admitting evidence of a victim's fear of another when victim's state of mind is not a material issue); *cf. People v. Madson, supra*, 638 P.2d at 28–29 (not deciding the question).

We need not decide the relevance and admissibility of such evidence here because any error in admitting it was harmless.

A court's erroneous evidentiary ruling will be disregarded as harmless if there is not a reasonable probability that the error contributed to the defendant's conviction. In making this determination, we inquire whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. *See generally Salcedo v. People, supra*, 999 P.2d at 841.

The problem with using evidence of a victim's fear of another to prove identity, motive, malice, or intent in a homicide case is that the victim's statements would be "used indirectly to infer the defendant's past conduct (a threat or an assaultive act) from which his future conduct and state of mind are inferred." *People v. Madson, supra*, 638 P.2d at 29 n. 14.

However, the record here is replete with evidence of defendant's threats against the victim and his convictions for violation of a restraining order, harassment, and domestic violence against the victim; consequently, substantial evidence, independent of that challenged here, existed from which the jury could properly infer defendant's malice and his motive to kill the victim. *See People v. Hulsing*, 825 P.2d 1027, 1030 (Colo.App. 1991). Further, a reasonable jury would likely assume, from the evidence of defendant's threats and prior convictions, that the victim feared him. *See State v. Smith*, 868 S.W.2d 561, 573 (Tenn.1993)("When one considers the proof of Defendant's previous threats and violent assaults upon the victims, that [one of the victims] would have been afraid of the Defendant is obvious.").

Because the effect of the evidence challenged here was essentially cumulative to that produced by other properly admitted evidence, we conclude that any error in admitting it did not substantially influence the verdict or affect the fairness of trial. *See People v. Fuller*, 788 P.2d 741, 746–47 (Colo. 1990). Accordingly, reversal is not warranted on this ground.

### VI. Phone Messages

Defendant contends that the trial court erred by circulating to the jury transcripts of phone messages defendant left for the victim in the months before the murder and by allowing the jury unsupervised access to tape recordings of those messages. We are not persuaded.

Defendant did not object to these procedures at trial, and we again apply ordinary plain error review. *See* Crim. P. 52(b); *People v. Gilbert*, 12 P.3d 331, 337 (Colo.App. 2000).

### A. Transcripts

 Accurate transcriptions of sound recordings are admissible to assist the jury in following the recordings while they are played. *People v. Gable*, 647 P.2d 246, 256 (Colo.App.1982).

On appeal, defendant does not argue that the transcription was inaccurate, but that it impermissibly emphasized the evidence. However, a division of this court has already determined that providing a transcription of a tape recording does not unduly emphasize the evidence because, without it, the jury might otherwise be compelled to replay the tape numerous times to discern its contents. *See People v. Coca*, 40 Colo.App. 440, 443, 580 P.2d 1258, 1259 (1978).

Accordingly, we conclude that the use of the transcript was not error, much less plain error.

### B. Tape Recordings

Although a trial court errs by allowing the jury unsupervised access to video or audio recordings of testimonial out-of-court statements, *People v. Montoya*, 773 P.2d 623, 626 (Colo.App.1989), no such rule exists with respect to nontestimonial recordings. Those recordings depict the event itself rather than a narration thereof. *See People v. Aponte*, 867 P.2d 183, 188 (Colo.App.1993)(videotape and transcription of drug transaction); *see also People v. Ferrero*, 874 P.2d 468, 473 (Colo.App.1993)(no difference between transcript and videotape for purposes of this rule).

Here, the transcript and tapes were of hostile and threatening telephone messages defendant left for the victim in the months preceding the murder. Because the messages did not narrate past events, they were nontestimonial in character and thus, could properly be examined by the jury during deliberations without the supervision of the trial court. *See People v. Aponte, supra,* 867 P.2d at 188–89.

### VII. Other Contentions

Finally, we reject defendant's contentions that reversal is required because of: (1) plain error in that the jury was not instructed that, pursuant to § 13–90–101, C.R.S.2001, it could consider evidence of a witness's felony conviction in determining the witness's credibility, *see People v. Garcia*, 981 P.2d 214, 216 (Colo.App.1998); (2) plain error in that the court did not clarify certain instructions to the jury, *see People v. White, supra* (because defendant had opportunity to actively participate in preparing the response and ultimately agreed to the response given, he cannot assert error on appeal); and (3) cumulative error, *see People v. Rivera*, 56 P.3d 1155 (Colo.App.2002)(cumulative effect of errors did not substantially prejudice defendant's right to a fair trial).

Accordingly, the judgment is affirmed.

Judge PIERCE * and Judge RULAND,* concur.